## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------:
DIONIS RODRIGUEZ,                          :
                                           :
              Plaintiff,                   :
                                           :
       v.                                  :      Civil Action No. 1:22-cv-04370
                                           :
GB LODGING, LLC; ANOLAG JACPOT 2           :      COMPLAINT
JV, LLC; GFI CAPITAL RESOURCES GROUP,      :
INC.; GFI CAPITAL HOLDINGS, LLC; ALLEN     :      JURY TRIAL DEMANDED
I. GROSS; and BRUCE BLUM,                  :
                                           :
              Defendants.                  :
----------------------------------------------------------:
```

Plaintiff Dionis Rodriguez ("Plaintiff" or "Rodriguez"), by his attorneys, Huth Reynolds LLP, as and for his Complaint against Defendants GB Lodging, LLC ("GB Lodging"), Anolag Jacpot 2 JV, LLC ("Anolag"), GFI Capital Resources Group, Inc. ("GFI Capital"), GFI Capital Holdings, LLC ("GFI Capital Holdings"), Allen I. Gross ("Gross"), and Bruce Blum ("Blum" and, collectively with GB Lodging, Anolag, GFI Capital, and Gross, the "Defendants"), alleges as follows:

### NATURE OF THIS ACTION

1.     Plaintiff, a former executive of GB Lodging, files this action to enforce his contractual promoted participation earnings interest and right to receive profits participation payments in connection with certain Defendants' acquisition, ownership, and sale of the Old No. 77 Hotel and Chandlery in New Orleans, Louisiana.

2.     Plaintiff also seeks in this action an equitable accounting from the Defendants of the financial status of two other real property investments in which Plaintiff has contractual promoted participation earnings interests and rights in order to ascertain whether any profits participation payments are due to him in connection with those real property investments.

## PARTIES

3.      Plaintiff Dionis Rodriguez is a citizen and resident of the State of New Jersey.

4.      Defendant GFI Capital is a New York corporation with its principal place of business at 140 Broadway, 41st Floor, New York, NY 10005.

5.      Defendant GB Lodging is a Delaware limited liability company with its principal place of business at 140 Broadway, 41st Floor, New York, NY 10005.  On information and belief, GB Lodging's only members are, and were at all times relevant to this action, Defendants Gross and Blum.  On information and belief, GB Lodging also is, and was at all times relevant to this action, a controlled affiliate of Defendant GFI Capital.

6.      Defendant Anolag is a Delaware limited liability company with its principal place of business at 140 Broadway, 41st Floor, New York, NY 10005.  On information and belief, Anolag's only members are, and were at all times relevant to this action, Defendants Gross and Blum.  On information and belief, Anolag also is, and was at all times relevant to this action, a controlled affiliate of Defendant GFI Capital.

7.      Defendant GFI Capital Holdings is a New York limited liability company with its principal place of business at 140 Broadway, 41st Floor, New York, NY 10005.  On information and belief, GFI Capital Holdings' only member is GFI Real Estate Limited, a company organized under the laws of the British Virgin Islands with its principal place of business in Israel.  On information and belief, GFI Capital Holdings also is, and was at all times relevant to this action, an affiliate of Defendants GFI Capital, GB Lodging, and Anolag.

8.      On information and belief, Defendant Gross is a citizen and resident of the State of New York.  Gross is, and on information and belief was at all times relevant to this action, the Chairman and Chief Executive Officer of GFI Capital and, on information and belief, is, and was

at all times relevant to this action, a co-founder and member of both GB Lodging and Anolag and the controlling shareholder of GFI Real Estate Limited.

9.     On information and belief, Defendant Blum is a citizen and resident of the State of New York.  On information and belief, Blum is a co-founder, former President and Managing Member, and current special member of GB Lodging, and is, and was at all times relevant to this action, a co-founder and member of Anolag.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this action is between citizens of different states.

11.     This Court has personal jurisdiction over all Defendants in this action because, based on the allegations contained herein, all Defendants are domiciled in the State of New York and this judicial district and transact business in the State of New York and this judicial district.

12.     Venue for this action is proper in this Court pursuant to 28 U.S.C. Section 1391 because, on information and belief, all Defendants are residents of the State of New York and this judicial district, and because a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

13.     Plaintiff was employed by Defendant GB Lodging as its Executive Vice President, Acquisitions & Development from February 1, 2012 until approximately September 24, 2013.

**Plaintiff's Contractual Interests Created by GB Lodging's Terms of Employment**

14.     Plaintiff and Defendant GB Lodging are parties to a contract dated as of January 26, 2012 and effective as of February 1, 2012 (the "Terms of Employment").  The Terms of

Employment are formatted as a letter from GB Lodging to Plaintiff with the subject line, "Re: Terms of Employment with GB Lodging, LLC".[1]

15.     Section III of the Terms of Employment, titled "**Investment Participation**", describes interests in promoted participation earnings that GB Lodging granted to Plaintiff ("Promote Participation Interests"):

> In the event that GB Lodging sponsors a fund, syndicated investment vehicle for purposes of acquiring a property (ies) or directly or indirectly acquires a property (ies) or makes an investment (s) located anywhere in the world, [Plaintiff] will receive, without charge, a 5% interest in the promoted participation earned and received by GB Lodging, LLC or its affiliate(s) after (i) the full return of GB Principals' (Bruce Blum and Allen Gross) capital investment and (ii) a return on GB's Principals' capital investment of 12%.[2]

16.     Section III of the Terms of Employment also describes investment participation rights that GB Lodging granted to Plaintiff ("Investment Participation Rights"):  "In addition, you will have the right, but not the obligation, to invest in transactions at the 'General Partner' level in an amount up to 5% of the aggregate General Partner investment (the 'Investment')."[3]

17.     Section III of the Terms of Employment further provides in relevant part:

> Notwithstanding the preceding paragraph [i.e., the portion of Section III of the Terms of Employment quoted in relevant part above], in the event that GB Lodging acquires the Beekman Palace your promoted participation will be 2% in the promoted participation earned and received by GB Lodging, LLC or its affiliate(s) after the full return of the GB's principal's capital investment and a return on their capital investment of 12%.[4]

18.     In other words, if GB Lodging were the entity that acquired the "Beekman Palace", then Plaintiff would only receive a 2% Promote Participation Interest instead of the larger 5% Promote Participation Interest otherwise granted by Section III of the Terms of Employment.  If,

---

[1] A true and correct copy of the fully executed Terms of Employment is attached hereto as **Exhibit A**.

[2] Ex. A at 2.

[3] *Id*.

[4] *Id.*

however, instead of GB Lodging itself, another affiliate of GB Lodging acquired the "Beekman Palace", then Plaintiff's Promote Participation Interest in that connection would be 5%.

19.     Section III of the Terms of Employment contains no language cross-referencing other Sections of the Terms of Employment or conditioning the Promote Participation Interests or Investment Participation Rights that it granted to Plaintiff on other provisions of the Terms of Employment.

20.     Section III of the Terms of Employment contains no expiration date, sunset provision, termination provision, or other limitation as to the duration or time frame for the Promote Participation Interests or Investment Participation Rights that it granted to Plaintiff.

21.     Section VII of the Terms of Employment, titled "**Termination**", sets forth the "options" that, depending "upon the circumstance under which [Plaintiff's] employment is terminated", would "be available with respect to the termination or continuance of [Plaintiff's] **<u>investment</u>** in projects as described above under the section, 'Investment Participation'".[5]

22.     Section VII of the Terms of Employment provides in part:

A. If this Agreement is terminated by GB Lodging for Cause, as defined herein, GB Lodging shall have the option, in its sole discretion, to either (1) convert [Plaintiff's] **<u>equity investment</u>** in all projects to that of a standard "fund investor" in each of the respective project investment partnerships; or (2) purchase your entire **<u>equity investment</u>** in all projects assuming a sale of that project as [sic] Fair Market Value ("FMV", as defined herein) and a distribution to you (based upon the actual principal amount that **<u>you have invested</u>**, **<u>excluding any share of any "promote"</u>**) as if you were a standard fund investor.[6]

23.     In other words, if GB Lodging were to terminate the Terms of Employment "for Cause" against Plaintiff as defined therein, GB Lodging would have the option to convert or

---

[5] *Id*. at 5 (emphasis added).

[6] *Id*. (emphasis added).

purchase from Plaintiff—but **not** extinguish, eliminate, or invalidate—any **equity investments** that Plaintiff may have chosen to make pursuant to Section III of the Terms of Employment.

24.    Section VII of the Terms of Employment also provides in part:

> Likewise, if this Agreement is terminated by [Plaintiff] for Cause then [Plaintiff] shall have the option to cause GB Lodging to (1) continue [Plaintiff's] **equity investment** in all projects under the same terms and conditions under which [Plaintiff] [was] invested at the time of termination, or (2) purchase [Plaintiff's] entire **equity investments** in all projects assuming a sale of those projects at FMV.[7]

25.    In other words, if Plaintiff were to terminate the Terms of Employment "for Cause" against GB Lodging as defined therein, Plaintiff would have the option to continue or sell to GB Lodging any **equity investments** that Plaintiff may have chosen to make pursuant to Section III of the Terms of Employment.

26.    Section VII of the Terms of Employment further provides in part:

> If GB Lodging or [Plaintiff] terminate this Agreement **for any other reason than Cause**, then GB Lodging (in the event [Plaintiff] terminate[s]) or [Plaintiff] (in the event GB Lodging terminates) will have the option to either (a) continue [Plaintiff's] **equity investment** in all projects, or (b) cause GB Lodging to purchase [Plaintiff's] **entire equity investments** in all projects assuming a sale of those projects at FMV and a distribution to [Plaintiff] (based upon the actual principal amount that [Plaintiff] [has] invested, **including [Plaintiff's] share of any "promote"**).  [Plaintiff's] investment in these options (a) and (b) shall be treated as if [Plaintiff] were an Affiliate Investor for all investments that were made within 30 months prior to the termination of this agreement; for all other investments (i.e. those made more than 30 months prior to termination) will be treated at the same terms of the Principal level respective to each investment that [Plaintiff] initially entered into.[8]

27.    In other words, if GB Lodging were to terminate the Terms of Employment for any reason other than "for Cause" against Plaintiff as defined therein, Plaintiff would have the option to either continue any **equity investments** that Plaintiff may have chosen to make pursuant to

---

[7] *Id.* (emphasis added).

[8] *Id.* at 6 (emphasis added).

Section III of the Terms of Employment or sell to GB Lodging such equity investments **plus** his "share of any 'promote'"—i.e., his Promote Participation Interests.[9]

28.     Likewise, if Plaintiff were to terminate the Terms of Employment for any reason other than "for Cause" against GB Lodging as defined therein, GB Lodging would have the option to either continue any **equity investments** that Plaintiff may have chosen to make pursuant to Section III of the Terms of Employment or purchase from Plaintiff such equity investments **plus** his "share of any 'promote'"—i.e., his Promote Participation Interests.[10]

29.     Section VII of the Terms of Employment specifically defines "Cause" as:

> (i) the respective party's willful and continued failure to perform substantially its duties under this agreement, (ii) the respective party's willful engagement in conduct which is demonstrably injurious to the other party, monetarily or otherwise, (iii) with respect to a person employed by GB Lodging, such party's habitual absenteeism, chronic alcoholism or any other form of addiction, (iv) a final non-appealable adjudication against the party's interests in a criminal or civil proceeding, (v) the respective party's filing for or becomes [sic] subject to a bankruptcy proceeding which is not dismissed within 120 days, or (vi) if the party is in material breach of this agreement, and, **in the case of clauses (i), (ii), (iii), and (vi) above, the party fails to cure such breach or correct such conduct after notice to said party and the expiration of a reasonable period of time to so cure or correct**.[11]

30.     In other words, except in instances of bankruptcy or final adverse adjudications (neither of which is applicable in this action), "Cause" as defined in the Terms of Employment **cannot exist** unless the party alleging such "Cause" provides **notice** to the other party of that party's alleged "willful and continued failure to perform substantially its duties under" the Terms of Employment, "willful engagement in conduct which is demonstrably injurious to the" party alleging such "Cause", "habitual absenteeism, chronic alcoholism or any other form of addiction",

---

[9] *Id.*

[10] *Id.*

[11] *Id.* at 5–6 (emphasis added).

and/or "material breach" of the Terms of Employment **and** such claimed misconduct or material breach is **not cured or corrected** after "a reasonable period of time".[12]

31.     Thus, although Section VII of the Terms of Employment provides for potential **acceleration** of Plaintiff's entitlement to payment for his Promote Participation Interests in the event of a termination not "for Cause", **nothing in the Terms of Employment contemplates extinguishing, eliminating, or invalidating Plaintiff's Promote Participation Interests**—even in the event of a termination by GB Lodging "for Cause".

### Defendants' Acquisition and Development of the Beekman Property

32.     Starting in March 2012, after Plaintiff's employment as GB Lodging's Executive Vice President, Acquisitions & Development pursuant to the Terms of Employment had already begun, GB Lodging and/or other affiliates of Defendants acquired the landmark building and surrounding property located at 5 Beekman Street (formerly 119-133 Nassau Street) and 115 Nassau Street, in New York, New York (collectively, the "Beekman Property").

33.     Specifically, on or about March 15, 2012, Defendants' affiliate 5 Beekman Property Owner LLC acquired the historic Temple Court Building located at 5 Beekman Street (Block 90, Lot 14) in New York, New York ("5 Beekman Street") for approximately $64 million.

34.     The 5 Beekman Street property had previously been referred to as the "Beekman Palace".[13]

---

[12] *Id.*

[13] *See, e.g.*, Joey Arak, "New York's 'Most Beautiful Atrium' Finally Out of Hiding", Curbed New York (June 16, 2010) ("the building's owners want to restore the place and turn it into a **hotel called Beekman Palace**"), *available at* https://ny.curbed.com/2010/6/16/10511566/new-yorks-most-beautiful-atrium-finally-out-of-hiding; Jen Carlson, "Abandoned Building To Become Palace On Beekman Street", Gothamist (June 16, 2010), *available at* https://gothamist.com/arts-entertainment/abandoned-building-to-become-palace-on-beekman-street ("Carr says the new owners are converting the building in to a hotel, to be called The Beekman Palace.").

35.     5 Beekman Property Owner LLC is a Delaware limited liability company with its principal place of business at 140 Broadway, 41st Floor, New York, NY 10005.  On information and belief, Defendant Gross is, and was at all times relevant to this action, the principal and manager, as well as a member, of 5 Beekman Property Owner LLC, and 5 Beekman Property Owner LLC is, and was at all times relevant to this action, an affiliate of Defendant GB Lodging and a controlled affiliate of Defendant GFI Capital.

36.     In March 2012 multiple public sources reported that GB Lodging had acquired 5 Beekman Street.[14]

37.     On or about June 16, 2012, Defendants' affiliate Lana Luft LLC acquired the property located at 115 Nassau Street, New York, New York (Block 90, Lot 16) next to the 5 Beekman Street property as well as adjacent air rights (Block 90, Lot 9014) for a combined purchase price of approximately $21.5 million.

38.     Lana Luft LLC is a Delaware limited liability company.  On information and belief, Lana Luft LLC's principal place of business is at 140 Broadway, 41st Floor, New York, NY 10005, Defendant Gross is, and was at all times relevant to this action, a member of Lana Luft LLC, and Lana Luft LLC is, and was at all times relevant to this action, an affiliate of Defendant GB Lodging and a controlled affiliate of Defendant GFI Capital.

---

[14] *See, e.g.*, Thompson Hotels, "Iconic 5 Beekman Street Acquired by GB Lodging, LLC", PR Newswire (Mar. 19, 2012), *available at* https://www.prnewswire.com/news-releases/iconic-5-beekman-street-acquired-by-gb-lodging-llc-143358886.html; Miriam Lamey, "NYC's Famed 5 Beekman Sold to GB Lodging", GlobeSt.com (Mar. 20, 2012), *available at* https://www.globest.com/sites/globest/2012/03/20/nycs-famed-5-beekman-sold-to-gb-lodging/?slreturn=20220416151029; "GB Lodging LLC Acquires Historic 5 Beekman Street in New York City", Hotel Newswire (Mar. 21, 2012), *available at* https://www.hotelexecutive.com/newswire/40572/; *see also* Want Branding, "The Beekman Hotel", *available at* https://wantbranding.com/case-studies/the-beekman-hotel/ (case study by Want Branding, the company retained by GB Lodging to explore name options for the Beekman Property, noting, "In 2012, GB Lodging – a New York hotel investment, development and asset management firm – purchased the Temple Court"—i.e., the Beekman Property).

39.     In May 2014, multiple public media sources reported that Defendants and their affiliates had recently entered into a joint venture with Elliott Management Corporation to provide a $150 million equity investment, along with a $195 million construction loan, to convert the Beekman Property into a luxury hotel with an adjacent condominium tower of private residences.[15]

40.     The hotel portion of the Beekman Property, with the nominal street address 123 Nassau Street, New York, New York (the "Beekman Hotel") opened for business in August 2016.[16]

41.     The 51st-floor penthouse in the condominium tower portion of the Beekman Property (the "Beekman Residences") reportedly sold in October 2020 for $10.4 million.[17]

**Defendants' Acquisition of the Old No. 77 Hotel Property**

42.     In August 2013, during Plaintiff's tenure of employment as GB Lodging's Executive Vice President, Acquisitions & Development, Defendants GB Lodging and Anolag acquired the former Ambassador Hotel located at 535 Tchoupitoulas Street in New Orleans,

---

[15] See, e.g., Alexandra Stevenson, "Elliott Management Backs Skyscraper Revival", N.Y. Times DealBook (May 23, 2014), available at https://dealbook.nytimes.com/2014/05/23/elliott-management-backs-skyscraper-revival/; GFI Development Company, LLC, "GFI Development, GB Lodging & Elliott Management, Through a JV, to Redevelop NYC's The Beekman", Hotel-Online.com (May 27, 2014), available at https://www.hotel-online.com/tag/gb-lodging/; Gail Kalinoski, "GFI Development, GB Lodging Secure $350M in Financing for Manhattan's The Beekman", Commercial Property Executive (May 28, 2014), available at https://www.commercialsearch.com/news/gfi-development-gb-lodging-secure-350m-in-financing-for-manhattans-the-beekman/; "GFI Development, GB Lodging & Elliott Management Form a JV to Redevelop NYC's The Beekman", Hotel Executive (May 28, 2014), available at https://www.hotelexecutive.com/newswire/49047/gfi-development-gb-lodging-elliott-management-form-a-jv-to-redevelop-nycs-the-beekman; "Gross of GFI Development and Blum of GB Lodging secure $350m in financing for The Beekman; includes a $195 million construction loan made by a syndicate led by HSBC and M&T Bank", New York Real Estate Journal (June 23, 2014), available at https://nyrej.com/gross-of-gfi-development-and-blum-of-gb-lodging-secure-350m-in-financing-for-the-beekman-includes-a-195-million-construction-loan-made-by-a-syndicate-led-by-hsbc-and-m-t-bank.

[16] See, e.g., Zoe Rosenberg, "The Beekman Hotel, now open, unveils its glorious atrium and guest rooms", Curbed New York (Aug. 23, 2016), available at https://ny.curbed.com/2016/8/23/12612750/beekman-hotel-interiors-opening-nyc; Clinton Nguyen, "An abandoned 130-year-old skyscraper is now Manhattan's newest luxury hotel", Business Insider (Aug. 29, 2016), available at https://www.businessinsider.com/new-york-beekman-hotel-renovation-2016-8.

[17] See Jennifer Gould, "Beekman penthouse sells to ad exec for $12.5M", N.Y. Post (Oct. 28, 2020), available at https://nypost.com/2020/10/28/beekman-penthouse-sells-to-ad-exec-for-12-5m/.

Louisiana, and subsequently renovated and renamed that property the Old No. 77 Hotel & Chandlery (the "Old No. 77 Hotel Property").

**Plaintiff's Contractual Interests Created by the Anolag Profit Participation Agreement**

43.     Soon after Defendants GB Lodging and Anolag acquired the Old No. 77 Hotel Property, Plaintiff and Anolag entered into a Profit Participation Agreement dated as of September 16, 2013 (the "Anolag Agreement").[18]

44.     Pursuant to Section 3 of the Anolag Agreement, Plaintiff is entitled to receive an annual profits participation payment[19] (a "Profits Participation Payment"), payable once each calendar year on or before December 31st, equal to 5% of the total amount of cash "Distributions" that Anolag paid out to its members over the course of that particular calendar year.  The Anolag Agreement defines "Distributions" to mean:

> for any calendar year, all cash distributions actually distributed by the LLC to its members, in respect of their membership interests in the LLC, from net cash flow of the LLC or in liquidation of the LLC, to the extent such distributions exceed the sum (i) Unreturned Member Contributions[20] (determined as of the beginning of such calendar year) plus (ii) a cumulative, annual 12% return (compounded quarterly) on the amount of the capital contributions of the Members, outstanding from time to time.[21]

45.     Paragraph 6 of the Anolag Agreement provides that, "upon termination of [Plaintiff]'s employment with GB, for any reason, [Anolag] shall have the right to buy-out and extinguish [Plaintiff]'s rights under this Agreement (including [Plaintiff]'s rights to any Profit

---

[18] A true and correct copy of the fully executed Anolag Agreement is attached hereto as **Exhibit B**.

[19] The text of the Anolag Agreement sometimes refers to this payment using the capitalized term "Profits Participation Payment" and sometimes refers to this payment using the capitalized term "Profits Payment".  *See* Ex. B.

[20] The term "Unreturned Member Contributions" is defined in the Anolag Agreement to mean "the difference of (i) the total amount of capital contributions contributed to the LLC by its members less (ii) the total amount of distributions made by the LLC to its members in return of such capital contributions."  *Id.* ¶ 2(k).

[21] *Id.* ¶ 2(b).

Participation Payments) (the 'Participation Rights') for an amount equal to the Fair Market Value of the Participation Rights."[22]

46.     The Anolag Agreement expressly incorporates the Terms of Employment's definition of "Cause" for termination, but **<u>unlike</u>** the Terms of Employment, the Anolag Agreement provides in relevant part that "the [Plaintiff]'s rights under this Agreement (**<u>including the right to receive any future Profit Participation Payments</u>**) shall terminate in the event that (i) the [Plaintiff]'s employment with GB [Lodging] is terminated 'for cause' (as determined pursuant to the provisions of the Employment Agreement [i.e., the Terms of Employment]) . . . ."[23]

**Plaintiff's Decision to Leave GB Lodging**

47.     Prior to Plaintiff and Anolag's mutual execution of the Anolag Agreement on September 16, 2013, Plaintiff had already notified GB Lodging that he intended to resign from his position at GB Lodging to pursue other opportunities.

48.     Plaintiff left GB Lodging on good terms, cleaning out his office at GB Lodging several days after his nominal last day without incident, and participating in multiple telephone calls after cleaning out his office to assist GB Lodging in transitioning his projects.

49.     At no point during Plaintiff's employment with GB Lodging or around the time of his departure from GB Lodging did Defendants suggest to Plaintiff that his departure could be, would be, or was a termination "for Cause", or that any basis for such a termination existed.  To the contrary, Defendants did not give Plaintiff any notice of any purported grounds for termination "for Cause" or provide him any reasonable opportunity "to cure such breach or correct such

---

[22] *Id.* ¶ 6.

[23] *Id.* ¶ 3.

conduct", as would have been necessary to establish the requisite basis for termination for "Cause" under Section VII of the Terms of Employment.[24]

**Defendants' Acquisition of the Bond Street Property**

50.     During his employment at GB Lodging, Plaintiff also worked on a prospective acquisition of certain real property located at or about 61 Bond Street (also known as 252 Schermerhorn Street) in Brooklyn, New York (the "Bond Street Property") with the intention of constructing a new luxury hotel there.   Defendants' affiliates subsequently completed that acquisition.

51.     On information and belief, when Defendants' affiliates first acquired the Bond Street Property, they did so in two separate transactions totaling approximately $15.475 million: (i) a $2 million transaction that closed on December 18, 2013, and (ii) a $13,475,000 transaction that closed on May 15, 2014.

52.     Defendants and their affiliates subsequently developed the Ace Hotel Brooklyn on the Bond Street Property, which opened for business in July 2021.[25]

**Defendants' Sale of the Old No. 77 Hotel Property**

53.     On or about May 31, 2016, Defendants GB Lodging and Anolag consummated the sale of their ownership interests in the Old No. 77 Hotel Property to Provenance Hotel Partners.[26]

---

[24] Ex. A at 6.

[25] *See, e.g.*, Nikki Ekstein, "The Latest Ace Hotel Takes On the Stroller Brigade in Brooklyn", Bloomberg.com (July 29, 2021), *available at* https://www.bloomberg.com/news/articles/2021-07-29/new-ace-hotel-brooklyn-is-all-grown-up-first-look-in-pictures-interviews; Ben Miller, "Ace Hotel opens in Brooklyn", New York Business Journal (July 29, 2021), *available at* https://www.bizjournals.com/newyork/news/2021/07/29/new-ace-hotel-opens-in-brooklyn-today.html.

[26] *See, e.g.*, Andrew Valenti, "Old No. 77 Hotel & Chandlery changes hands", New Orleans City Business (June 3, 2016), *available at* https://neworleanscitybusiness.com/blog/2016/06/03/old-no-77-hotel-chandlery-changes-hands/.

54.     On or about June 20, 2016, Plaintiff sent an email to Defendant Blum, congratulating him on the sale of the Old No. 77 Hotel Property, reminding him of Plaintiff's right to Profits Participation Payments for the Old No. 77 Hotel Property, and requesting information regarding the total amount of money Plaintiff would be receiving in that connection.[27]

55.     In response to that request, on or about July 20, 2016, Ilya Braz, then Vice President and General Counsel of Defendant GFI Capital, emailed Plaintiff detailed documentation regarding the Old No. 77 Hotel Property, including profit and loss statements, audited financial statements, the closing statement from the sale, and an Excel spreadsheet showing Defendants' proposed distribution of proceeds.  Under Defendants' proposed distribution described in that Excel spreadsheet, Plaintiff would have received a mere **$52,100** as his 2016 Profits Participation Payment in connection with the Old No. 77 Hotel Property.[28]

56.     Neither Defendant Blum nor Mr. Braz made any suggestion in their communications with Plaintiff in June and July 2016—or at any prior time—that Plaintiff did not have a Promote Participation Interest or a right to Profits Participation Payments in connection with the Old No. 77 Hotel Property (or, for that matter, any other properties on which Plaintiff worked during his tenure with GB Lodging).

57.     Nor did Defendant Blum or Mr. Braz make any suggestion in their communications with Plaintiff in June or July 2016—or at any prior time—that GB Lodging had terminated Plaintiff's employment "for Cause", that GB Lodging had or believed it had any basis for such a "for Cause" termination, or that the circumstances of Plaintiff's voluntary departure from GB

[27] A true and correct copy of Plaintiff's June 20, 2016 email to Defendant Blum is attached hereto as **Exhibit C**.

[28] True and correct copies of Braz's July 20, 2016 email and the relevant portion of the Excel spreadsheet attached to that email are included in **Exhibit C** attached hereto.

Lodging's employ nearly four years earlier, in September 2013, had any effect on Plaintiff's Promote Participation Interests or rights to Profits Participation Payments.

58.     To the contrary, Defendants' voluntary provision to Plaintiff of detailed financial information regarding the Old No. 77 Hotel Property in July 2016—again, nearly four years after Plaintiff's departure from GB Lodging's employ—demonstrated Defendants' acknowledgment and understanding that Plaintiff was, in fact, entitled to and owed a Profits Participation Payment in connection with the Old No. 77 Hotel Property.

59.     In subsequent communications, however, Plaintiff and Defendants could not reach agreement on the method of calculating the amount of that Profits Participation Payment, and no payment was made to Plaintiff.

60.     On or about November 1, 2016, an attorney representing Plaintiff, Jennifer Cabrera of Cabrera Cammarota PLLC, sent Defendants a letter (the "2016 Demand Letter") calculating the Profits Participation Payment owed to Plaintiff in connection with the Old No. 77 Hotel Property to be $230,693, requesting payment of that and any other sums due to Plaintiff under the Terms of Employment and the Anolag Agreement, and noting Plaintiff's continued entitlement to other Promote Participation Interests, including with respect to the Beekman Property.[29]

61.     Mr. Braz explicitly reaffirmed Plaintiff's continuing entitlement to a Profits Participation Payment in connection with the Old No. 77 Hotel Property on a telephone call with Plaintiff that took place on or about October 21, 2020.  On that call, after a lengthy discussion of current events, Mr. Braz turned the conversation to business, opening with, "**So, ah, how do we get you your money?**"  After discussing the amount that was owed, Mr. Braz acknowledged that the payment to Plaintiff in connection with the Old No. 77 Hotel Property was "long in the works",

---

[29] A true and correct copy of Ms. Cabrera's November 1, 2016 letter is attached hereto as **Exhibit D**.

said that Plaintiff "can get all the money that's in [an] account" related to the Old No. 77 Hotel Property transaction, quipped that Plaintiff "should just take the money and run", and emphasized near the end of their conversation that "**the only reason your distribution wasn't made is, you, you know, right?  You came back and you said, 'No, like, I want this much**'".

62.     To date, Defendants have not made any payments to Plaintiff in connection with the Old No. 77 Hotel Property, whether pursuant to his Promote Participation Interest in it under the Terms of Employment or his rights to Profits Participation Payments for it under the Anolag Agreement.

### Defendants' Partial Sale of the Beekman Property

63.     On information and belief, Defendants' affiliates 5 Beekman Property Owner LLC and/or Lana Luft LLC received approximately $211.3 million in total gross proceeds from the sale of the Beekman Residences condominium units between 2016 and 2020.

64.     On information and belief, in the 3 years from fiscal year 2017 to fiscal year 2019, the Beekman Hotel earned an estimated total net operating income of $30.2 million.

65.     According to an appraisal report by LW Hospitality Advisors commissioned by Defendant GFI Capital, the estimated fair market value of the Beekman Hotel as of July 1, 2021 was $290 million, with "Owner's Invested Capital" of $170 million.

66.     The 2021 annual report of GFI Real Estate Limited (on information and belief, an affiliate of Defendants) publicly filed with the Tel Aviv Stock Exchange on March 30, 2022 states that the fair value of the Beekman Hotel as of December 31, 2021 was $286,789,000.

### Defendants' Partial Sale of the Bond Street Property

67.     According to an appraisal report commissioned by Defendant GFI Capital, the appraised fair market value of the Bond Street Property as of Dec. 31, 2019 was $161 million.

68.     On information and belief, on or about February 1, 2021, Defendants' affiliate Bond Street Owner LLC sold the ground underneath the new Ace Hotel Brooklyn for approximately **$45,000,000** (the "Ground Sale") to 61 Bond Street Ground Owner LLC, which, on information and belief, is an affiliate of the company iStar.  61 Bond Street Ground Owner LLC then entered into a property lease agreement with Bond Street Lessee LLC, another affiliate of Defendants.  The exact terms of that lease agreement have not been publicly disclosed.

69.     On information and belief, Defendants and their affiliates have to date earned at least **$15,000,000** in net profits from the Ground Sale.

70.     The 2021 annual report of GFI Real Estate Limited (on information and belief, an affiliate of Defendants) publicly filed with the Tel Aviv Stock Exchange on March 30, 2022 states that the fair value of the Bond Street Property as of December 31, 2021 was $171,614,000.

### Plaintiff's Efforts to Collect His Profits Participation Payment in Connection with the Old No. 77 Hotel Property and Obtain Further Information about the Beekman Property and the Bond Street Property

71.     On December 28, 2020, the undersigned counsel sent a letter on behalf of Plaintiff to Defendants GFI Capital, GB Lodging, Anolag, and certain of Defendants' affiliates, care of Ilya Braz, then and now Managing Director and General Counsel of GFI Capital (the "2020 Demand Letter"), reiterating Plaintiff's demand that Defendants pay him the full Profits Participation Payment that he was entitled to receive in connection with the Old No. 77 Hotel Property.[30]

72.     The 2020 Demand Letter also requested from Defendants the following information in order to enable Plaintiff to properly assess the value of his Promote Participation Interests in the

---

[30] A true and correct copy of the undersigned counsel's December 28, 2020 letter and the proposed Tolling Agreement that accompanied it are attached hereto as **Exhibit E**.

Beekman Property and the Bond Street Property as well as his entitlement to any payments in connection with such interests:

(i) a complete summary of the current equity owners of the Beekman Property as well as any changes in the equity ownership of the Beekman Property that have occurred since [Defendants] first acquired the Beekman Property;

(ii) a complete summary of the current equity owners of the Bond Street Property as well as any changes in the equity ownership of the Bond Street Property that have occurred since [Defendants] first acquired the Bond Street Property;

(iii) a complete summary of any and all monetary distributions that have been made to the equity owners of the Beekman Property since [Defendants] first acquired the Beekman Property, as well as any funds that have been earned but not yet distributed;

(iv) a complete summary of any and all monetary distributions that have been made to the equity owners of the Bond Street Property since [Defendants] first acquired the Bond Street Property, as well as any funds that have been earned but not yet distributed;

(v) any and all appraisals or valuations of the Beekman Property that have been completed within the last 24 months; and

(vi) any and all appraisals or valuations of the Bond Street Property that have been completed within the last 24 months.[31]

73. With the goal of avoiding the need for litigation such as this action, the 2020 Demand Letter also attached a proposed Tolling Agreement.[32]

74. The undersigned counsel spoke with Mr. Braz by telephone on January 12, 2021, during which call Mr. Braz requested certain information from the undersigned counsel and stated that he would work with Defendants' IT department to pull certain information requested in the 2020 Demand Letter.[33]

---

[31] Ex. E.

[32] *See id.*

[33] *See* **Exhibit F** attached hereto, which contains a true and correct copy of a January 19, 2021 email from Karl Huth to Mr. Braz recounting in part the substance of their January 12, 2021 telephone call.

75.     On January 19, 2021 the undersigned counsel sent Mr. Braz the information he had requested on their January 12 call and inquired about the information that Mr. Braz stated he would work with his IT department to pull.[34]

76.     On January 21, 2021, Mr. Braz responded, thanking the undersigned counsel for the information provided, claiming that he "disagree[d] with any implication that [he] conceded that monies are owed to [Plaintiff]", and stating that he was "looking into [Plaintiff's] claims" and that either he "or an outside firm will get back to you in the next week about resolving this matter."[35]

**The Filing and Dismissal of Defendants' Preemptive Litigation against Plaintiff**

77.     Instead of paying Plaintiff the years-overdue money he was owed in connection with the Old. No. 77 Hotel Property, providing the information that Plaintiff had requested, and agreeing to the proposed Tolling Agreement in order to avoid the need for litigation, approximately three hours after Mr. Braz claimed he was "looking into [Plaintiff's] claims", Defendants GB Lodging and Anolag filed a Verified Complaint against Plaintiff (the "State Court Complaint") in the Supreme Court of the State of New York, County of New York, purporting to plead two causes of action for declaratory judgment and two causes of action for breach of contract (the "State Court Action").[36]

78.     After Plaintiff removed the State Court Action to this Court pursuant to 28 U.S.C. Sections 1332, 1441, and 1446 (the "Prior Federal Action"), Defendants GB Lodging and Anolag

---

[34] *See* Ex. F.

[35] *Id.*

[36] *See GB Lodging, LLC v. Rodriguez*, Index No. 650461/2021 (N.Y. Sup. Ct.).

filed an Amended Verified Complaint (the "<u>Amended Complaint</u>"), dropping their breach of contract claims but reasserting their declaratory judgment claims.[37]

79.     Defendants GB Lodging and Anolag subsequently filed, with leave of the Court, a Second Amended Verified Complaint (the "<u>Second Amended Complaint</u>"), continuing to assert their declaratory judgment claims.[38]

80.     As alleged in the motion for sanctions that Plaintiff filed against GB Lodging, Anolag, and their counsel in the Prior Federal Action, GB Lodging and Anolag's State Court Complaint, Amended Complaint, and Second Amended Complaint all falsely and defamatorily alleged that GB Lodging had terminated Plaintiff's employment "for cause", purported to rely on non-existent provisions of the Terms of Employment, and argued on the basis of those false allegations that, *inter alia*, Plaintiff was not entitled to any Promote Participation Interest or any distributions or proceeds with respect to any hotel acquisition.[39]

81.     Prior to the filing of the State Court Complaint, Defendants never provided Plaintiff with any notice of any alleged breach by him of either the Terms of Employment or the Anolag Agreement, any notice of any alleged conduct by him falling within the definition of "Cause" under the Section VII of the Terms of Employment, or any opportunity to cure any such alleged breach or correct any such alleged conduct.

82.     By Memorandum and Order dated March 18, 2022, the Court in the Prior Federal Action granted a motion filed by Plaintiff to dismiss the claims in GB Lodging and Anolag's

---

[37] *See GB Lodging, LLC v. Rodriguez*, Case No. 1:21-cv-01154-NRB (S.D.N.Y.), Am. Verified Compl. (Mar. 25, 2021), ECF No. 9.

[38] *See GB Lodging, LLC v. Rodriguez*, Case No. 1:21-cv-01154-NRB (S.D.N.Y.), Second Am. Verified Compl. (Apr. 29, 2021), ECF No. 20.

[39] *See GB Lodging, LLC v. Rodriguez*, Case No. 1:21-cv-01154-NRB (S.D.N.Y.), Def.'s Mem. in Support of His Mot. for Sanctions (June 1, 2021), ECF No. 28.

Second Amended Complaint under the applicable six-year statute of limitations, noting that "as [GB Lodging and Anolag] conceded at oral argument" on Plaintiff's motion to dismiss, "there is no act [by Plaintiff] in the last six years that would constitute a breach of the Terms of Employment."[40]

**Calculation of the Total Profits Participation Payment Plaintiff Is Entitled to Receive**

83.     As detailed in the 2016 Demand Letter and above, Paragraphs 2 and 3 of the Anolag Agreement and Section III of the Terms of Employment entitle Plaintiff:

> to receive 5% of any cash distribution made by Anolag Jacpot 2 JV LLC, less member contributions and a cumulative 12% return on the amount of capital contributions of the members.  According to a worksheet [Plaintiff] received from [Mr. Braz] created by Adam Maisel, profit after a 12% return to the members (Misters Blum and Gross) was $4,613,859.  5% of that amount is $230,693.[41]

84.     More specifically, the Excel spreadsheet that Mr. Braz provided to Plaintiff on July 20, 2016 reflected (in cell C6 of the "FINAL Distributions" worksheet) a total "Redemption Payment" in the amount of $6,830,829 and (in cells C46 and C47 of that same worksheet) "Return Of / On Investment with a 12% IRR" to Anolag and Jacpot 2 totaling $2,216,969.[42]  Subtracting the latter from the former would leave $4,613,860 of "Distributions" within the meaning of the Anolag Agreement on which Plaintiff's Profits Participation Payment was to be based, and 5% of that amount (i.e., his "Profit Percentage" under the Anolag Agreement) is $230,693.

85.     Pursuant to Paragraph 3 of the Anolag Agreement, Anolag was required to remit Plaintiff's Profits Participation Payment by no later than December 31, 2016.

---

[40] *GB Lodging, LLC v. Rodriguez*, Case No. 1:21-cv-01154-NRB (S.D.N.Y.), Mem. & Order at 11 (Mar. 18, 2022), ECF No. 47.  The Court denied Plaintiff's motion for sanctions, reasoning that since it could not "rule on the circumstances of his termination in the context of the motion to dismiss due to the statute of limitations bar, it would be incongruous to do so in the context of [Plaintiff's] sanctions motion." *Id.* at 13.

[41] Ex. D at 1.

[42] Ex. C.

86.     To date, nearly five and a half years after that deadline, and nearly six years after Defendants' sale of the Old No. 77 Hotel Property, Defendants still have not paid Plaintiff even a single dollar of his Profits Participation Payment.

### FIRST CAUSE OF ACTION

**(Against Defendant GB Lodging for Breaches of Contract)**

87.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

88.     The Terms of Employment are a valid, binding contract between Plaintiff and Defendant GB Lodging.

89.     Under Section III of the Terms of Employment, GB Lodging granted Plaintiff Promote Participation Interests in the Old No. 77 Hotel Property, the Beekman Property, and the Bond Street Property.

90.     Section III of the Terms of Employment provides that when any sponsorship, acquisition, or investment in which Plaintiff holds a Promote Participation Interest yields enough profits to meet the profitability threshold specified therein—to wit, a full return of GB Lodging's (and/or its affiliates') initial capital investment(s) plus a return on that capital investment of 12%— then Plaintiff will be entitled to receive 5% of any additional proceeds from that sponsorship, acquisition, or investment in excess of the aforementioned profitability threshold.

91.     By Defendants' own calculations provided to Plaintiff in July 2016, the redemption payment of $6,830,829 that Defendants GB Lodging and Anolag received in connection with the May 31, 2016 sale of the Old No. 77 Hotel Property exceeded the aforementioned profitability threshold, yielding, after returns of capital with 12% returns on investment in the total amount of $2,216,969, a "promoted participation" within the meaning of Section III of the Terms of Employment in the amount of $4,613,860.  GB Lodging therefore owed, and had a contractual

duty to pay, Plaintiff a 5% Promote Participation Interest in that "promoted participation", in the amount of $230,693.

92.    GB Lodging breached Section III of the Terms of Employment by failing to pay Plaintiff his Promote Participation Interest in connection with the Old No. 77 Hotel Property promptly after the aforementioned returns of capital with 12% returns on investment were paid subsequent to the May 31, 2016 sale of the Old No. 77 Hotel Property.

93.    Plaintiff has suffered damages as a result of GB Lodging's breach of Section III of the Terms of Employment with respect to the Old No. 77 Hotel Property.

94.    Plaintiff is entitled to damages in an amount to be proven at trial, but believed to be at least $230,693, plus prejudgment interest on that amount dating back to May 31, 2016.

95.    Section X of the Terms of Employment provides, "This agreement shall be governed by and construed and enforced in accordance with the internal substantive laws (and not the laws of conflicts) of the State of New York."[43]

96.    Plaintiff's breach of contract claim against GB Lodging is timely because this action is being commenced within six years of Defendants' May 31, 2016 sale of the Old No. 77 Hotel Property and subsequent distribution of returns of capital with 12% returns on investment.[44]

## SECOND CAUSE OF ACTION

### (Against Defendant Anolag for Breach of Contract)

97.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

---

[43] Ex. A at 8.

[44] *See* N.Y. C.P.L.R. § 213(2).  Count I also is timely because ten of former New York Governor Andrew Cuomo's executive orders issued during the COVID-19 pandemic tolled the statute of limitations applicable to Count I for a total of 228 days.  *See Brash v. Richards*, 149 N.Y.S.3d 560, 562 (N.Y. App. Div. 2021); *accord Vivar v. BSREP UA Riv. Crossing LLC*, Index No. 162024/2018, 2021 WL 5014488, slip op. at 2–3 (N.Y. Sup. Ct. Oct. 28, 2021).

98.     The Anolag Agreement is a valid, binding contract between Plaintiff and Defendant Anolag.

99.     Under Section 3 of the Anolag Agreement, Plaintiff is entitled to receive an annual Profits Participation Payment payable once each calendar year on or before December 31st, equal to 5% of the total amount of "Distributions" that Anolag pays out to its members over the course of that particular calendar year.

100.     By Defendants' own calculations provided to Plaintiff in July 2016, the redemption payment of $6,830,829 that Defendants GB Lodging and Anolag received in connection with the May 31, 2016 sale of the Old No. 77 Hotel Property exceeded the Unreturned Member Contributions, with 12% returns on investment, yielding "Distributions" within the meaning of the Anolag Agreement in the amount of $4,613,860.  Anolag therefore owed, and had a contractual duty to pay, Plaintiff a 5% Profits Participation Payment based on such Distributions, in the amount of $230,693.

101.     Anolag breached Section 3 of the Anolag Agreement by failing to pay Plaintiff his Profits Participation Payment in connection with the Old No. 77 Hotel Property by no later than December 31, 2016.

102.     Plaintiff has suffered damages as a result of Anolag's breach of Section 3 of the Anolag Agreement.

103.     Plaintiff is entitled to damages in an amount to be proven at trial, but believed to be at least $230,693, plus prejudgment interest on that amount dating back to December 31, 2016.

104.    Paragraph 11 of the Anolag Agreement provides, "This Plan [sic] shall be interpreted and applied in accordance with New York law without regard to the conflicts of law provisions thereof and without regard to the place of employment of any Participant."[45]

105.    Plaintiff's breach of contract claim against Anolag is timely because this action is being commenced within six years of the December 31, 2016 contractual deadline for Defendant Anolag to have paid Plaintiff his Profits Participation Payment in connection with the Old No. 77 Hotel Property (and within six years of Defendants' May 31, 2016 sale of the Old No. 77 Hotel Property and subsequent Distributions from the proceeds of such sale).[46]

## THIRD CAUSE OF ACTION

### (Against Defendants GFI Capital, GFI Capital Holdings,

### Gross, and Blum for Unjust Enrichment)

106.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

107.    On information and belief, Defendants GFI Capital, GFI Capital Holdings, Gross, and Blum each and collectively were unjustly enriched when one or more of their affiliates, including but not limited to Defendants GB Lodging and Anolag, breached their respective contractual obligations to Plaintiff by withholding, retaining, and/or transferring to GFI Capital, GFI Capital Holdings, Gross, Blum, and/or other of their affiliates the Promote Participation Interest/Profits Participation Payment to which Plaintiff was and is contractually entitled.

---

[45] Ex. B ¶ 11.

[46] *See* N.Y. C.P.L.R. § 213(2).  Like Count I, Count II also is timely because ten of former New York Governor Andrew Cuomo's executive orders issued during the COVID-19 pandemic tolled the statute of limitations applicable to Count I for a total of 228 days.  *See Brash v. Richards*, 149 N.Y.S.3d 560, 562 (N.Y. App. Div. 2021); *accord Vivar v. BSREP UA Riv. Crossing LLC*, Index No. 162024/2018, 2021 WL 5014488, slip op. at 2–3 (N.Y. Sup. Ct. Oct. 28, 2021).

108.    On information and belief, on or after May 31, 2016, Defendant GB Lodging or Defendant Anolag transferred some or all of $230,693 in proceeds from the sale of the Old No. 77 Hotel Property—i.e., some or all of the amount due to Plaintiff in connection with the Old No. 77 Hotel Property under the Terms of Employment and the Anolag Agreement—into an escrow account controlled by GFI Capital, GFI Capital Holdings, Gross, Blum, and/or one of their affiliates.

109.    Plaintiff has suffered damages as a result of the unlawful withholding, retention, and/or transfers to GFI Capital, GFI Capital Holdings, Gross, Blum, and/or one or more of their affiliates of some or all of the Promote Participation Interest/Profits Participation Payment in connection with the Old No. 77 Hotel Property to which Plaintiff was and is contractually entitled.

110.    Permitting GFI Capital, GFI Capital Holdings, Gross, Blum, and/or one or more of their affiliates to retain any portion of Plaintiff's Promote Participation Interest/Profits Participation Payment in connection with the Old No. 77 Hotel Property, which totals at least $230,693, would be contrary to equity and good conscience.

111.    Plaintiff is entitled to damages in an amount to be proven at trial, but believed to be at least $230,693, plus prejudgment interest on that amount dating back to December 31, 2016.

112.    Plaintiff's unjust enrichment claim against GFI Capital, GFI Capital Holdings, Gross, and Blum is timely because this action is being commenced within six years of Defendants' sale of the Old No. 77 Hotel Property and subsequent distributions and transfers from the proceeds of such sale and within six years of the December 31, 2016 contractual deadline for Defendant

Anolag to have paid Plaintiff his Profits Participation Payment in connection with the Old No. 77 Hotel Property.[47]

## FOURTH CAUSE OF ACTION

**(Against All Defendants for an Equitable Accounting of the Beekman Property)**

113.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

114.    Plaintiff was employed by Defendant GB Lodging as GB Lodging's Executive Vice President, Acquisitions & Development from February 1, 2012 until approximately September 24, 2013.

115.    Pursuant to Section III of Plaintiff's Terms of Employment, Defendant GB Lodging granted Plaintiff a Promote Participation Interest and Investment Participation Rights in the Beekman Property.

116.    Plaintiff's ownership of a Promote Participation Interest and Investment Participation Rights in the Beekman Property, which contemplated and involved Plaintiff's entrustment of money and/or property with Defendants and/or their affiliates, established a mutual and confidential relationship between Plaintiff and Defendants.

117.    Because of Plaintiff's ownership of a Promote Participation Interest in the Beekman Property, Defendants have a legal duty to provide a reasonable and detailed accounting to Plaintiff of Defendants' financial management of their investments in the Beekman Property.

---

[47] *See* N.Y. C.P.L.R. § 213(1)–(2).  Count III also is timely because ten of former New York Governor Andrew Cuomo's executive orders issued during the COVID-19 pandemic tolled the statute of limitations applicable to Count I for a total of 228 days.  *See Brash v. Richards*, 149 N.Y.S.3d 560, 562 (N.Y. App. Div. 2021); *accord Vivar v. BSREP UA Riv. Crossing LLC*, Index No. 162024/2018, 2021 WL 5014488, slip op. at 2–3 (N.Y. Sup. Ct. Oct. 28, 2021).

118.   Plaintiff's 2020 Demand Letter requested an accounting of basic financial information regarding the Beekman Property in order to enable Plaintiff to properly assess the value of his Promote Participation Interest in the Beekman Property as well as his entitlement to any payments in connection with that Promote Participation Interest.

119.   Defendants refused to comply with Plaintiff's reasonable request for this basic financial information regarding the Beekman Property.

120.   Plaintiff is entitled to an equitable accounting of Defendants' investments in the Beekman Property in order to enable Plaintiff to properly assess the value of his Promote Participation Interest in the Beekman Property as well as his entitlement to any payments in connection with such Promote Participation Interest.

121.   Plaintiff has no adequate remedy at law other than to seek an order from the Court requiring Defendants to provide the requested equitable accounting of Defendants' investments in the Beekman Property.

## FIFTH CAUSE OF ACTION

**(Against All Defendants for an Equitable Accounting of the Bond Street Property)**

122.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

123.   Plaintiff was employed by Defendant GB Lodging as GB Lodging's Executive Vice President, Acquisitions & Development from February 1, 2012 until approximately September 24, 2013.

124.   Pursuant to Section III of Plaintiff's Terms of Employment, Defendant GB Lodging granted Plaintiff a Promote Participation Interest and Investment Participation Rights in the Bond Street Property.

28

125.    Plaintiff's ownership of a Promote Participation Interest and Investment Participation Rights in the Bond Street Property, which contemplated and involved Plaintiff's entrustment of money and/or property with Defendants and/or their affiliates, established a mutual and confidential relationship between Plaintiff and Defendants.

126.    Because of Plaintiff's ownership of a Promote Participation Interest in the Bond Street Property, Defendants have a legal duty to provide a reasonable and detailed accounting to Plaintiff of Defendants' financial management of their investments in the Bond Street Property.

127.    Plaintiff's 2020 Demand Letter requested an accounting of basic financial information regarding the Bond Street Property in order to enable Plaintiff to properly assess the value of his Promote Participation Interest in the Bond Street Property as well as his entitlement to any payments in connection with such Promote Participation Interest.

128.    Defendants refused to comply with Plaintiff's reasonable request for this basic financial information regarding the Bond Street Property.

129.    Plaintiff is entitled to an equitable accounting of Defendants' investments in the Bond Street Property in order to enable Plaintiff to properly assess the value of his Promote Participation Interest in the Bond Street Property as well as his entitlement to any payments in connection with such Promote Participation Interest.

130.    Plaintiff has no adequate remedy at law other than to seek an order from the Court requiring Defendants to provide the requested equitable accounting of Defendants' investments in the Bond Street Property.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A)    On the First Cause of Action, awarding damages in favor of Plaintiff against Defendant GB Lodging in an amount to be determined at trial;

(B)     On the Second Cause of Action, awarding damages in favor of Plaintiff against Defendant Anolag in an amount to be determined at trial;

(C)     On the Third Cause of Action, awarding damages in favor of Plaintiff against Defendants GFI Capital, GFI Capital Holdings, Gross, and/or Blum in an amount to be determined at trial;

(D)     On the Fourth Cause of Action, ordering each of the Defendants to make an equitable accounting to Plaintiff concerning the Beekman Property, the value of Plaintiff's Promote Participation Interest in the Beekman Property, and any payments due to Plaintiff in connection with such Promote Participation Interest;

(E)     On the Fifth Cause of Action, ordering each of the Defendants to make an equitable accounting to Plaintiff concerning the Bond Street Property, the value of Plaintiff's Promote Participation Interest in the Bond Street Property, and any payments due to Plaintiff in connection with such Promote Participation Interest;

(F)     Awarding interest, including prejudgment interest, on all damages awarded;

(G)     Awarding reasonable costs and expenses incurred in this action, including attorneys' and expert fees, as may be permitted by law or equity; and

(H)     Such further relief as the Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  May 26, 2022                              Respectfully submitted,

                                                 HUTH REYNOLDS LLP

                                                  S/ James W. Fribley
                                                 Matthew J. Reynolds (MR 5740)
                                                 Karl C. Huth (KH 0000)
                                                 James W. Fribley (5564984)
                                                 Luke Rushing (5713086)
                                                 41 Cannon Court
                                                 Huntington, NY 11743
                                                 (212) 731-9333
                                                 reynolds@huthreynolds.com
                                                 huth@huthreynolds.com
                                                 jfribley@huthreynolds.com
                                                 lrushing@huthreynolds.com

                                                 *Counsel for Plaintiff Dionis Rodriguez*