UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
DIONIS RODRIGUEZ,

        Plaintiff,

     - against –

GB LODGING, LLC, ANOLAG JACPOT
2 JV LLC, GFI CAPITAL RESOURCES
GROUP, INC., GFI CAPITAL
HOLDINGS, LLC, ALLEN I. GROSS,
and BRUCE BLUM,

        Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 4370 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    This case arises out of a dispute between plaintiff, Dionis Rodriguez ("Rodriguez" or "plaintiff"), and his former employer, defendant GB Lodging, LLC ("GB Lodging" or "defendant"). Plaintiff's employment with GB Lodging began in February 2012 and lasted less than two years. Both immediately before and after Rodriguez's employment ended -- and throughout the 10 years since he left GB Lodging -- the parties have disputed Rodriguez's entitlement to certain so-called promote participation interests (the "Promote Participation Interests" or "PPIs") that he claims he is owed under two agreements he signed in 2012 and 2013.

    Nearly eight years after Rodriguez's employment at GB Lodging ended, GB Lodging and another defendant in this case, Anolag Jacpot 2 JV LLC ("Anolag") brought suit against Rodriguez seeking a

declaration that plaintiff was not owed any payments under those agreements.  See Dkt. 21-cv-1154.  On March 18, 2022, we dismissed that action, finding those defendants' claims to be time-barred. See GB Lodging, LLC v. Rodriguez, No. 21-cv-1154 (NRB), 2022 WL 825492 (S.D.N.Y. Mar. 18, 2022).

Rodriguez thereafter filed the instant suit against six defendants: GB Lodging; Anolag; two other affiliates of GB Lodging, GFI Capital Resources Group, Inc. ("GFI Capital") and GFI Capital Holdings, LLC ("GFI Capital Holdings"); and two individual defendants, Allen I. Gross ("Gross") and Bruce Blum ("Blum," and collectively with GB Lodging, Anolag, GFI Capital, GFI Capital Holdings, and Gross "defendants").  See ECF Nos. 1 (the "Complaint" or "Compl."), 17 (the "Amended Complaint" or "AC").  Plaintiff alleges nine causes of action with respect to the aforementioned PPIs: four breach of contract claims (Counts One, Two, Six, and Seven); one unjust enrichment claim (Count Three); two equitable accounting claims (Counts Four and Five); and two declaratory judgment claims (Counts Eight and Nine).  See AC.  Before the Court is defendants' motion to dismiss eight of the nine claims.  See ECF No. 20.  For the reasons discussed herein, defendants' motion is granted in part and denied in part.

-2-

BACKGROUND[1]

### I.    The Terms of Employment

On January 26, 2012, Rodriguez signed an employment agreement (the "Terms of Employment") with GB Lodging -- a hotel development and asset management firm -- to become GB Lodging's Executive Vice President of Acquisitions & Development.  Rodriguez's employment was short-lived, beginning on February 1, 2012 and ending on September 24, 2013.  See AC ¶¶ 13-14; GB Lodging, LLC, 2022 WL 825492, at *1.

Eight of plaintiff's claims are based on language contained within Section III of the Terms of Employment.  See ECF No. 17-1, Exhibit A to Plaintiff's Amended Complaint ("Terms of Employment"), at 2-3.  Specifically, Section III provided that Rodriguez could accrue PPIs in properties that GB Lodging acquired, but only if certain conditions precedent were met first.   It states:

> In the event that GB Lodging sponsors a fund, syndicated
> investment vehicle for purposes of acquiring a property
> (ies) or directly or indirectly acquires a property
> (ies) or makes an investment (s) located anywhere in the

---

[1] The following facts are drawn from the plaintiff's Amended Complaint and the exhibits attached thereto, which the Court finds are incorporated by reference.  See DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (holding for a document to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents'") (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).  For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiff's favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

world, you will receive, without charge, a 5% interest in the promoted participation earned and received by GB Lodging, LLC or its affiliate(s) <u>after (i) the full return of GB's Principals' (Bruce Blum and Allen Gross) capital investment and (ii) a return on GB's Principals' capital investment of 12%</u>.

<u>Id.</u> at 2 (the "PPI Provision") (emphasis added).[2] The PPI Provision is, on its face, silent as to whether Rodriguez's rights with respect to those PPIs continue past termination of his employment. <u>See id.</u>

By contrast, three other provisions within the Terms of Employment explicitly survive the agreement's termination. First, in addition to the PPI Provision, Section III grants Rodriguez the option to make equity investments in GB Lodging's acquisitions. <u>See id.</u> (stating that Rodriguez could "invest in [GB Lodging's] transactions at the 'General Partner' level in an amount up to 5% of the aggregate General Partner investment") (the "Equity Investments Provision"). Section VII of the Terms of Employment then separately outlines "options" for equity investments, if made by Rodriguez, to continue past termination of the agreement,

---

[2] Section III also stated that if GB Lodging acquired a specific property located at or about 5 Beekman Street, New York, New York (the "Beekman Street Property"), Rodriguez's "promoted participation will be 2% in the promoted participation earned and received by GB Lodging, LLC or its affiliate(s) after the full return of the GB Lodging's principals' capital investment and a return on their capital investment of 12%." <u>Id.</u>

depending on the circumstances under which his employment terminated.  See id. at 5-6.[3]

Second, a confidentiality provision, Section VIII, continues past termination.  See id. at 6-7 ("You agree that certain property of GB Lodging is Confidential Information <u>and shall remain so</u>. . . . You agree that you will . . . promptly return to GB Lodging <u>upon termination all such Confidential Information</u> . . . .") (emphasis added).  Third, a separate non-solicitation provision, Section IX, explicitly "survive[s] termination of th[e] Agreement."  Id. at 7-8.

## II.  The Three Properties at Issue

Rodriguez contends that he is entitled to PPIs with respect to three properties acquired by GB Lodging and/or its affiliates. The first property is located at 535 Tchoupitoulas Street in New Orleans (the "Old No. 77 Property") and was acquired by GB Lodging and Anolag in August 2013 while plaintiff was still employed at GB Lodging.  See AC ¶ 43.  On May 31, 2016, after plaintiff left the company, GB Lodging and Anolag sold their interests in the Old No.

---

[3] Specifically, Section VII delineated Rodriguez's and GB Lodging's rights with respect to Rodriguez's equity investments if: (i) GB Lodging terminated the Terms of Employment for Cause; (ii) Rodriguez terminated the Terms of Employment for cause; and (iii) either party terminated the Terms of Employment for any reason other than for cause.  See id.

We note, however, that Rodriguez did not ultimately make any equity investments during his employment at GB Lodging.  See Tr. at 35.

77 Property for $6,830,829.00.  <u>See</u> AC ¶¶ 94, 104.  Rodriguez alleges that the conditions precedent for his entitlement to PPIs have been satisfied under Section III of the Terms of Employment, and he is owed $230,693.00 from that property.  <u>See</u> <u>id.</u> ¶ 104.[4]

The second property is located at or about 5 Beekman Street, New York, New York (the "Beekman Street Property").  Defendants' affiliate acquired the Beekman Street Property in two transactions in March and June of 2012 while Rodriguez was still employed at GB Lodging.  <u>See</u> <u>id.</u> ¶¶ 36-37.  In May 2014 (after Rodriguez left GB Lodging), defendants and their affiliates entered into a joint venture to convert the Beekman Palace property into a luxury hotel with an adjacent condominium tower of private residences.  <u>See</u> <u>id.</u> ¶ 39.  The hotel portion opened for business in August 2016, and "all or substantially all of the condominiums" have been sold. <u>See</u> <u>id.</u> ¶¶ 40, 42.  Rodriguez alleges that defendants' affiliates received approximately $211.3 million in total gross proceeds from condominium sales between 2016 and 2020, the hotel earned an estimated total net operating income of $30.2 million between 2017 and 2019, and a 2021 annual report from defendants' affiliate states that the fair value of the Beekman Hotel as of December 31, 2021 was $286,789,000.00.  <u>See</u> <u>id.</u> ¶¶ 73-76.  Plaintiff further

---

[4] As discussed in greater detail <u>infra</u>, the parties do not actually dispute Rodriguez's entitlement to payment with respect to the Old No. 77 Property.

contends "on information and belief" that the conditions precedent for his entitlement to PPIs have been satisfied, and thus he is owed payment stemming from his interests in that property.  See id. ¶¶ 148-61.

The final property is located at 61 Bond Street, New York, New York (the "Bond Street Property").  Rodriguez alleges that he worked on a prospective acquisition of the Bond Street Property while at GB Lodging with the company's intention of constructing a luxury hotel there.  See id. ¶ 60.  In December 2013 and May 2014 -- after Rodriguez left GB Lodging -- defendants' affiliates executed multiple transactions to acquire the Bond Street Property.  See id. ¶ 61.  Defendants and their affiliates thereafter developed the Ace Hotel Brooklyn on the property and sold the ground underneath for approximately $45,000,000.00 on February 1, 2021.  See id. ¶¶ 62, 78.  The Ace Hotel Brooklyn opened for business in July 2021.  Id. ¶ 62.  Like the Beekman Street Property, plaintiff contends, "on information and belief" that the conditions precedent for his entitlement to PPIs have been satisfied, and thus he is owed PPIs from that property.  See id. ¶¶ 162-72.

**III. The Anolag Agreement and Rodriguez's Departure from GB**

**Lodging**

On September 16, 2013, the month after GB Lodging and Anolag acquired the Old No. 77 Property, Rodriguez entered into a second agreement entitled the "Anolag Jacpot 2 JV LLC Profit Participation Agreement."  See ECF No. 17-2, Exhibit B to Plaintiff's Amended Complaint (the "Anolag Agreement," and together with the Terms of Employment, the "Agreements").  Eight days later, Rodriguez resigned from GB Lodging.  See AC ¶¶ 13, 53-55.[5]  Rodriguez alleges that he had informed defendants prior to signing the Anolag Agreement that he intended to leave GB Lodging.  See id. ¶¶ 46, 53.

The Anolag Agreement stated that, solely with respect to the Old No. 77 Property, Rodriguez was entitled to receive an annual "Profits Participation Payment," payable on December 31st of each calendar year from Anolag "for each calendar year during the term of this Agreement" in an amount equal to 5% of the total amount of cash "Distributions" that Anolag paid out to its members over the course of that particular calendar year.  See Anolag Agreement at 1-2.

---

[5] The parties disputed in their prior litigation whether plaintiff was terminated or resigned, but as defendants acknowledge, that disagreement is not relevant to the instant motion.  See ECF No. 21, Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs. Br.") at 2 n.4.

The Anolag Agreement did not specify its term, but provided that "[Rodriguez's] rights under this Agreement (including the right to receive any future Profit Participation Payments) shall terminate in the event that (i) the Participant's employment with GB is terminated 'for cause' (as determined pursuant to the provisions of the Employment Agreement) . . . or (iii) the LLC sells the [Old No. 77 Property] other than to an affiliate." Id. at 2.

## IV. The Parties' Pre- and Post-Departure Negotiations

Both before Rodriguez's departure from GB Lodging, and in the "weeks and months thereafter," the parties attempted to negotiate a separation agreement. See AC ¶ 57. However, the parties were unsuccessful. One sticking point in those negotiations was plaintiff's alleged entitlement to PPIs with respect to projects he worked on during his tenure at GB Lodging. See id. ¶¶ 56-59.

Rodriguez also describes two additional interactions of note between the parties that occurred during the 10 years since these initial negotiations. First, in June 2016 -- after GB Lodging and Anolag sold the Old No. 77 Property in May 2016 -- plaintiff emailed defendant Blum requesting information regarding the total amount of money he would receive in connection with that sale. See id. ¶¶ 64-65. GB Lodging's General Counsel replied in July 2016 with detailed documentation and did not dispute Rodriguez's

entitlement to payment.  See id. ¶ 66; ECF No. 17-3, Exhibit C to Plaintiff's Amended Complaint (email thread and Excel spreadsheet with the relevant calculations) (the "General Counsel Emails"). In subsequent communications, Rodriguez and defendants could not reach agreement on the method of calculating plaintiff's PPIs, which prompted a November 1, 2016 demand letter from Rodriguez's prior counsel.  See AC ¶¶ 69-70; ECF No. 17-4, Exhibit D to Plaintiff's Amended Complaint (the "2016 Demand Letter").  In that letter, Rodriguez sought $230,693.00 relating to the sale of the Old No. 77 Property and payment of any other sums due to plaintiff under the Agreements.  See 2016 Demand Letter, at 1-2.  Again, the parties' negotiations were unsuccessful.

Second, on December 28, 2020, plaintiff -- represented by Rodriguez's current counsel -- sent another letter to GB Lodging, demanding the same payment relating to the Old No. 77 Property and information to enable plaintiff to properly assess the value of his PPIs in the Beekman Street and Bond Street Properties.  See AC ¶¶ 81-82; ECF No. 17-5, Exhibit E to Plaintiff's Amended Complaint (the "2020 Demand Letter").  Plaintiff's counsel also sent defendants a proposed tolling agreement, which defendants did not sign.  See AC ¶ 83; 2020 Demand Letter, at 6-11.  The parties' negotiations were once more unsuccessful.

**V.   The Prior Action and Subsequent Procedural History**

Approximately six weeks after receiving the 2020 Demand Letter, defendants GB Lodging and Anolag filed suit against Rodriguez, seeking a declaratory judgment that, <u>inter alia</u>, he was not entitled to any payments under the Agreements. <u>See</u> Dkt. 21-cv-1154.  Rodriguez filed a motion to dismiss, which we granted on March 18, 2022 after hearing oral argument on February 17, 2022. <u>See</u> Dkt. 21-cv-1154, ECF No. 45; <u>GB Lodging, LLC</u>, 2022 WL 825492. Specifically, we held that GB Lodging's and Anolag's suit was time-barred, because their allegations focused on the circumstances of Rodriguez's termination, which obligated the Court to "make findings about issues that predate the filing of this case by more than six years."  2022 WL 825492, at *4.  In so holding, we "d[id] not opine on when [Rodriguez's] claims, if any, accrued."  <u>Id.</u> at *5 n.6.  However, we added that, "like [GB Lodging and Anolag], [Rodriguez] is subject to a six-year statute of limitations," and as such, "[s]hould [Rodriguez] choose to bring a case, he can only do so for causes of action that have accrued in the prior six years."  <u>Id.</u>

Two months later, on May 26, 2022, plaintiff filed the instant action.  <u>See</u> Compl.  On November 9, 2022, plaintiff filed his amended complaint, <u>see</u> AC, asserting nine causes of action: (i) breach of contract against GB Lodging concerning the Old No.

-11-

77 Property; (ii) breach of contract against Anolag concerning the Old No. 77 Property; (iii) unjust enrichment against Gross, Blum, GFI Capital, and GFI Holdings; (iv) request for an equitable accounting of the Beekman Property against all defendants; (v) request for an equitable accounting of the Bond Street Property against all defendants; (vi) breach of contract against GB Lodging concerning the Beekman Property; (vii) breach of contract against GB Lodging concerning the Bond Street Property; (viii) request for a declaratory judgment under the Terms of Employment concerning the Beekman Property against all defendants; and (ix) request for a declaratory judgment under the Terms of Employment concerning the Bond Street Property against all defendants.  See AC.

Defendants then sought permission to bring the instant motion to dismiss all claims except for Rodriguez's breach of contract claim under the Anolag Agreement (Count Two).  See ECF No. 14.[6] We granted defendants' request on October 26, 2022, see ECF No. 16, and on December 2, 2022, defendants filed their motion along with an associated memorandum of law, see ECF No. 21 ("Defs. Br."). Plaintiff filed his opposition on December 16, 2023 ("Pl. Opp."), and defendants submitted their reply on December 23, 2022 ("Defs.

---

[6] Defendants acknowledge that Count Two was timely filed, and as discussed infra, admit that Rodriguez is owed payment under the Anolag Agreement.  See Tr. at 3-6.

Reply"). The Court also held oral argument on defendants' motion on August 10, 2023. See Transcript of Aug. 10, 2023 Oral Argument ("Tr. __"). During oral argument, the Court requested supplemental case law from the parties, Tr. at 48-49, which they submitted on August 14, 2023. See ECF Nos. 26-27.

**LEGAL STANDARD**

### I.   Rule 12(b)(6)

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

**II.  Declaratory Judgment Act**

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  "Courts in this Circuit and elsewhere, however, have concluded that the federal Declaratory Judgment Act, see 28 U.S.C. § 2201, rather than an otherwise applicable state declaratory judgment act, governs in diversity actions under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)." Bruno v. Casella Waste Sys., Inc., 616 F. App'x 20, 21 n.2 (2d Cir. 2015).

"The Declaratory Judgment Act confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'"  Peconic Baykeeper, Inc. v. Suffolk County, 600 F.3d 180, 187 (2d Cir. 2010) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).  "The propriety of issuing a declaratory judgment may depend upon equitable considerations and is also informed by the teachings and experience concerning the functions and extent of federal judicial power."  Green v. Mansour, 474 U.S. 64, 72 (1985) (citations and quotation marks omitted).

-14-

In addition, as this Court wrote in 2022, "[t]o determine whether an action for declaratory judgment is time-barred, courts look to whether 'the applicable limitations period has run on a direct claim to obtain such relief.'" GB Lodging, LLC, 2022 WL 825492, at *5 (quoting 118 East 60th Owners, Inc. v. Bonner Props., Inc., 677 F.2d 200, 202 (2d Cir. 1982)); accord Bruno, 616 F. App'x at 21 n.2; see also Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 268-69 (S.D.N.Y. 2008) (collecting cases). There, as here, "[t]he basic nature of plaintiff['s] suit . . . is a contract action alleging a breach of the Agreements[, and] New York's statute of limitations for breach of contract actions is six years." GB Lodging, LLC, 2022 WL 825492, at *5 (citing N.Y. C.P.L.R. § 213).

## DISCUSSION

Before addressing the issues raised by the pending motion, it is noteworthy that defendants have clearly demonstrated that they do not dispute Rodriguez's entitlement to payment with respect to the Old No. 77 Property. See, e.g., Tr. at 5 (defendants' counsel agreeing with the Court that Rodriguez is owed a debt under the Anolag Agreement, though the amount is disputed). Moreover, plaintiff's counsel has conceded that, as a practical matter, the Anolag Agreement superseded the Terms of Employment with respect to Rodriguez's interests in the Old No. 77 Property:

-15-

> THE COURT: Look, I'm not saying that [the Anolag
> Agreement] says this agreement, on its face, resolves
> all the interests or concerns of the parties. It
> doesn't, but it does specifically address Old 77,
> changes the terms of his entitlement and, I think, to
> his advantage, at least arguably to his advantage. And
> as I said before, it's certainly not something you're
> about to walk away from, and I don't think you could
> argue or have a reason to argue that the employment
> agreement gives him more rights concerning Old 77 than
> Anolag does. So I think practically Anolag controls Old
> 77.
>
> MR. REYNOLDS: So, your Honor, we don't necessarily
> disagree with you with respect to the effect of that
> agreement on the Old 77 interest. Where we, obviously,
> have a difference of opinion with opposing counsel is
> with respect to these other properties.

Id. at 31-32.[7] Thus, the parties' arguments are only truly germane
to plaintiff's claims regarding the Beekman and Bond Street
Properties.

   With the above foundation in mind, we turn to defendants'
argument that plaintiff's breach of contract and declaratory
judgment claims should be dismissed on statute of limitations
grounds.

## I.   Statute of Limitations Issues (Counts Six, Seven, Eight,

---

[7] Mr. Reynolds's understanding also appears to align with the plain terms of
the Anolag Agreement. See Anolag Agreement, at 5 ("This Agreement constitutes
the entire agreement between the parties with respect to the subject matter
hereof and . . . shall supersede all prior agreements . . . between [Rodriguez]
and [Anolag] (or any of its affiliates)."); see also General Counsel Emails, at
4 (email from Rodriguez to GB Lodging's General Counsel stating: "Per the
Participation Agreement that was mutually executed on 9/13/2013," i.e., the
Anolag Agreement, "I am to receive 5% of the profits of the [Old No. 77 Property]
deal.") (emphasis added).

and Nine)

After considering the parties' briefing, and hearing oral argument on the pending motion, the potentially dispositive statute of limitations issues applicable to plaintiff's breach of contract and declaratory judgment claims may be articulated as follows:

> **FIRST**, did the six-year statute of limitations[8] begin to run, as defendants contend, when Rodriguez left GB Lodging, which terminated the Terms of Employment?

> **SECOND**, did the six-year statute of limitations begin to run, as defendants alternatively contend, shortly after Rodriguez left GB Lodging, because the discussions between the parties at the time, and their inability to reach the terms of a separation agreement, were sufficient to support the filing of a claim for anticipatory breach and/or declaratory judgment by Rodriguez?

> **THIRD**, does the statute of limitations only begin running, as Rodriguez alleges, after GB Lodging's principals recover their capital investment and a 12 percent return on that capital investment?[9]

---

[8] The parties agree (as they must) that the statute of limitations for a breach of contract action in New York is six years. See N.Y. C.P.L.R. § 213; Defs. Br. at 5; Pl. Opp. at 12-14. Moreover, as noted supra, the statute of limitations for plaintiff's declaratory judgment claims is tied to his substantive breach of contract claims. See GB Lodging, LLC, 2022 WL 825492, at *5 (quoting 118 East 60th Owners, Inc., 677 F.2d at 202); accord Bruno, 616 F. App'x at 21; Kermanshah, 580 F. Supp. 2d at 268. Thus, for either set of claims to be viable, they must have accrued on or after May 26, 2016 -- six years before plaintiff filed his complaint. See Defs. Br. at 6; Pl. Opp. at 11-14.

[9] We need not reach the third question if defendants prevail on either of questions one or two -- i.e., the Court determines that the statute of limitations began running on the date Rodriguez's employment ended or shortly thereafter.

Regardless of the articulation of these questions, their resolution is -- or potentially will be -- guided by the Court's determination of merits issues.   Indeed, both parties tie the Court's substantive interpretation of the PPI Provision to their statute of limitations arguments.

Specifically, plaintiff alleges that the PPI Provision's silence should be interpreted as extending his entitlement to PPIs past termination of his employment.   In Rodriguez's view, any accrual of those interests depends upon certain long-term benchmarks laid out in the Terms of Employment that were necessarily contemplated to post-date the contract.   See Pl. Opp. at 7-14.   Since the PPI Provision, from Rodriguez's perspective, extends past termination, he contends that the statute of limitations does not begin to run until after his PPIs accrue, i.e., the conditions precedent are met.   See id. at 4, 7.

In stark contrast, defendants argue that the PPI Provision's silence should be understood as precluding Rodriguez's interests from continuing past termination.   See Defs. Br. at 6-9; Defs. Reply at 3-5.   Rather, the PPI Provision should be read in context of the whole agreement, i.e., in harmony with three other provisions in the contract which explicitly extend beyond termination of the agreement.   See Terms of Employment, at 2-3, 5-

-18-

8.[10]   Accordingly, defendants urge the Court to conclude that,
unlike Sections VII, VIII, and IX, the parties did not intend for
the PPI Provision to survive termination of Rodriguez's
employment.  See Defs. Br. at 7-8; Defs. Reply at 3-5.  In addition,
defendants rely on the Anolag Agreement to argue that, if the PPI
Provision extended past the termination date, then the separate
Anolag Agreement is duplicative and serves no purpose.  Finally,
defendants contend that the Anolag Agreement's <u>existence</u> is
evidence of the parties' belief that Rodriguez's PPIs terminated
when his employment ended, because they would not have entered
into a separate agreement providing for continuing participation
interests with respect to the Old No. 77 Property unless it was
necessary to do so.  See Tr. at 10-12.

Defendants conclude from these arguments that any causes of
action under the Terms of Employment must necessarily be time-
barred, under two theories.  First, relying on the general rule
under New York law that a breach of contract claim begins running
upon termination of the agreement, and in the absence of language

---

[10] As discussed <u>supra</u>, Section VII outlines the parties' options beyond
termination with respect to any equity investments that Rodriguez could have
made while employed at GB Lodging but does not include similar procedures for
his PPIs.   See Terms of Employment at 2-3.   Similarly, the contract's
Confidentiality provision (Section VIII) continues past termination, <u>id.</u> at 6-
7 ("You agree that certain property of GB Lodging is Confidential Information
<u>and shall remain so</u>. . . .  You agree that you will . . . promptly return to GB
Lodging <u>upon termination all such Confidential Information</u> . . . .") (emphasis
added), and its Non-Solicitation provision (Section IX) explicitly "survive[s]
the termination of this Agreement," <u>id.</u> at 7-8.

to the contrary, they argue that the statute of limitations began
running for any breach claim when Rodriguez's employment ended in
September 2013.  See Defs. Br. at 5-6; see also Rachmani Corp. v.
9 E. 96th St. Apartment Corp., 211 A.D.2d 262, 267 (1st Dep't 1995)
("[O]nce a contract comes to an end, either by operation of its
terms or by declaration of an anticipatory breach as a result of
its repudiation, the Statute of Limitations begins to run.").
Second, defendants assert that the statute of limitations began
running on both plaintiff's breach of contract and declaratory
judgment claims shortly after Rodriguez left GB Lodging when the
two sides failed to consummate a separation agreement, and one of
the sticking points in negotiations was plaintiff's entitlement to
PPIs under the Terms of Employment.  See AC ¶ 57.  Under this
theory, plaintiff was on notice no later than the Fall and Winter
of 2013-14 that defendants disputed his entitlement to PPIs under
the Terms of Employment, yet he failed to file suit within six
years of that clear disagreement.  See Tr. at 10-12, 15-16; Helmer-
Cronin Const., Inc. v. Beacon Cmty. Dev. Agency, 156 A.D.2d 543,
543-44 (2d Dep't 1989) (breach of contract does not accrue until
plaintiff possesses a legal right to payment, and "[t]he facts of
each case will determine whether there came a time when the party
seeking payment should have viewed his claim as having been
constructively rejected, thus giving rise to the accrual of a cause

of action."); <u>Loral Corp. v. Goodyear Tire and Rubber Co.</u>, No. 93-cv-7013 (CSH) 1996 WL 38830, at *8 (S.D.N.Y. Feb. 1, 1996) (breach of contract accrued when defendant first informed plaintiff of its refusal to perform under the contract, and rejecting plaintiff's argument that, because the contract did not specify a deadline for performance, breach did not occur until after a "reasonable time" had passed); <u>Zwarycz v. Marnia Const., Inc.</u>, 102 A.D.3d 774, 776 (2d Dep't 2013) ("A [declaratory judgment] dispute matures into a justiciable controversy when a plaintiff receives direct, definitive notice that the defendant is repudiating his or her rights.").

Defendants have advanced a number of arguments, each of which is potentially dispositive. However, because the parties have not submitted definitive case law articulating the significance of Terms of Employment's failure to specifically address whether plaintiff's entitlement to PPIs was contingent on his continued employment, and the lack of a developed record on the parties' interactions and negotiations, we find that a ruling on the pending motion would be premature.

The issues described above are better informed by limited factual discovery, which should address:

- Any exchanges, oral or written, during negotiations of the Terms of Employment concerning whether the PPI Provision would continue past termination; and

- The parties' discussions prior to, and in the immediate aftermath of, plaintiff's departure from GB Lodging concerning his rights, if any, to PPIs.

After the parties engage on these narrow subjects, the Court will re-evaluate Rodriguez's claims with the benefit of a fuller record. Accordingly, defendants' motion to dismiss Counts One, Six, Seven, Eight, and Nine is denied without prejudice.[11]

We now turn to plaintiff's remaining causes of action: one count of unjust enrichment (Count Three) and two counts seeking an equitable accounting (Counts Four and Five).

## II. Unjust Enrichment Claim (Count Three)

Plaintiff alleges that his share of money from the sale of the Old No. 77 Hotel Property was not retained by GB Lodging or

---

[11] Defendants also argue that the PPI Provision, as construed by plaintiff, is invalid as a matter of law, because it: (i) was a provision of indefinite duration; (ii) violates the Rule Against Perpetuities; and (iii) is void for vagueness. See Defs. Br. at 10-11. We do not reach a determination on these issues in this Memorandum and Order, and it may never be necessary to reach them given the potentially dispositive statute of limitations and contractual interpretation issues.

However, we do address defendants' argument that plaintiff's declaratory judgment causes of action are improperly group pled against all defendants and only properly alleged against GB Lodging. Defendants are correct that the "eighth and ninth causes of action only refer[] to [d]efendants as a group and does not make any specific allegations about any of the [d]efendants." See Defs. Br. at 22; Compl. ¶¶ 173-180. "Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" See Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting Ferro v. Ry. Exp. Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)). Here, Rodriguez fails to articulate any theory under which he is entitled to a declaratory judgment against the non-GB Lodging defendants in his Amended Complaint or opposition briefing. As such, plaintiff's two declaratory judgment claims against Anolag, GFI Capital, GFI Capital Holdings, Blum, and Gross are dismissed.

Anolag -- with whom Rodriguez had contractual relationships -- but rather was transferred to one or more of defendants GFI Capital, GFI Capital Holdings, Gross, and Blum, who were therefore unjustly enriched.  See AC ¶¶ 124-29.[12]  Defendants argue that plaintiff's claims are foreclosed because his relationships with defendants were governed by contract, and plaintiff does not allege sufficient facts to survive a motion to dismiss.  See Defs. Br. at 11-17.

We agree with defendants.  Under New York law a cause of action for unjust enrichment may be dismissed "where the parties have entered into a contract that governs the subject matter" at issue.  Pappas v. Tzolis, 20 N.Y.3d 228, 234 (N.Y. 2012) (quoting Cox v. NAP Constr. Co., 10 N.Y.3d 592, 607 (N.Y. 2008)) (internal quotation marks omitted).  Indeed, the existence of a valid and binding contract "preclude[s] a claim for unjust enrichment even against a third party non-signatory to the agreement" such as defendants GFI Capital, GFI Capital Holdings, Blum, and Gross. See Law Debenture v. Maverick Tube Corp., No. 06-cv-14320 (RJS), 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) (collecting

---

[12] To state an unjust enrichment claim under New York law, plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011) (internal quotation marks omitted).  "The 'essence' of [an unjust enrichment] claim 'is that one party has received money or a benefit at the expense of another.'"  Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (quoting City of Syracuse v. R.A.C. Holding, Inc., 258 A.D.2d 905, 905 (4th Dep't 1999)).

cases).  Here, plaintiff's unjust enrichment claim against the above-referenced defendants is predicated on the same allegations underlying his breach of contract claim -- i.e., that defendants owe Rodriguez payments under the Agreements.  Because there is no dispute that the contractual relationship between plaintiff and defendants GB Lodging and Anolag governs this dispute, plaintiff's unjust enrichment claim must be dismissed with prejudice.[13]

### III. Equitable Accounting Claims (Counts Four and Five)

Last, plaintiff alleges that "[d]efendants have a legal duty to provide a reasonable and detailed accounting to [p]laintiff of [d]efendants' financial management of their investments" in the Beekman and Bond Street Properties.  AC ¶¶ 134, 143.[14]

These claims must be dismissed because Rodriguez fails at the threshold to establish "relations of a mutual and confidential nature" with the defendants, i.e., either "a fiduciary or confidential relationship with the defendant[s].'"  Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC, 159 F. Supp. 3d 324, 339 (E.D.N.Y. 2016) (quoting Leveraged Leasing Admin. Corp.

---

[13] Moreover, apart from its theoretical flaws, the substantive allegations underlying this claim are more properly considered in the context of judgment collection than unjust enrichment.

[14] "Under New York law, there are four elements to a claim for equitable accounting: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." Rosa v. TCC Commc'ns, Inc., No. 15-cv-1665, 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016).

v. PacifiCorp Cap., Inc., 87 F.3d 44, 49 (2d Cir. 1996)) (emphasis
added).  "'A fiduciary relationship arises when one has reposed
trust or confidence in the integrity or fidelity of another who
thereby gains a resulting superiority of influence over the first,
or when one assumes control and responsibility over another.'"
Faulkner v. Arista Records LLC, 602 F. Supp. 2d 470, 482 (S.D.N.Y.
2009) (quoting Cooper v. Sony Records Int'l, 2001 WL 1223492, at
*5 (S.D.N.Y. Oct. 15, 2001)).  And a "confidential relationship"
refers to "a relationship 'which induced plaintiff to entrust
defendant with property or money.'"  KJ Roberts & Co. Inc. v. MDC
Partners Inc., No. 12-cv-5779 (LGS), 2014 WL 1013828, at *12
(S.D.N.Y. Mar. 14, 2014) (quoting Beck v. CIT Group/Credit Fin.,
Inc., No. 95-cv-5800, 1998 WL 655547, at *4 (S.D.N.Y. Sept. 24,
1998)).

Because "'an arm's length business transaction, even those
where one party has superior bargaining power, is not enough to
give rise to a fiduciary relationship,'" Faulkner, 602 F. Supp. 2d
at 482 (quoting Sony Music Entertainment, Inc. v. Robison, 01-cv-
6415 (LMM), 2002 WL 272406, at *3 (S.D.N.Y. Feb. 26, 2002)), "New
York courts have repeatedly dismissed accounting claims where the
parties' relationship arises from a contract," Associated Mortgage
Bankers, Inc., 159 F. Supp. 3d at 339.  Plaintiff's equitable
accounting claims must therefore be dismissed against GB Lodging

-25-

and Anolag, where "the Amended Complaint describes a contract to perform certain services and share revenues," as "[t]here are no allegations—not even conclusory ones—so as to transform this ordinary commercial relationship into a fiduciary one." LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 167 (E.D.N.Y. 2012). And with respect to the remaining affiliate and individual defendants, "[p]laintiff does not allege any relationship at all, much less one of a mutual and confidential nature." Rosa, 2016 WL 67729, at *7.[15]

### CONCLUSION

Accordingly, for the reasons stated above, defendants' motion to dismiss is granted with respect to Counts Three (the unjust enrichment claim) and Counts Four and Five (the equitable accounting claims). However, defendants' motion is denied without prejudice with respect to Counts One, Six, and Seven (the breach of contract claims). Defendants' motion is granted with respect to Counts Eight and Nine (the declaratory judgment claims) against defendants Anolag, GFI Capital, GFI Capital Holdings, Blum, and Gross, but their motion is denied without prejudice with respect

---

[15] Nor could plaintiff ever demonstrate a "confidential relationship" with any of the defendants here, since he was not "induce[d] to entrust defendant[s] with property or money." See KJ Roberts & Co. Inc., 2014 WL 1013828, at *12. Rather, Rodriguez either earned, or did not earn, PPIs pursuant to certain conditions precedent under a bargained-for contractual agreement, but there is no viable argument that Rodriguez then "entrust[ed]" the money he is owed back in GB Lodging.

to defendant GB Lodging.

The parties should confer and submit an expeditious schedule to complete the discovery allowed herein and to submit any additional motions addressing the statute of limitations issues.

The Clerk of the Court is respectfully directed to terminate the motion pending at ECF No. 20, and as a consequence of our holdings on Counts Three, Eight, and Nine, dismiss all claims against defendants GFI Capital, GFI Capital Holdings, Blum, and Gross.

        **SO ORDERED.**

Dated:    New York, New York
          September 14, 2023

                                    NAOMI REICE BUCHWALD
                            UNITED STATES DISTRICT JUDGE