UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

DIONIS RODRIGUEZ,

                Plaintiff,

    - against –                          **MEMORANDUM AND ORDER**

GB LODGING, LLC and ANOLAG                22 Civ. 4370 (NRB)
JACPOT 2 JV LLC,

              Defendants.

------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This case arises out of a decade-long dispute between plaintiff Dionis Rodriguez ("Rodriguez" or "plaintiff") and his former employer, defendant GB Lodging, LLC ("GB Lodging"), regarding certain Promote Participation Interests ("PPIs") that plaintiff claims he is owed under two agreements executed in 2012 and 2013, respectively.[1]

This Court previously granted a motion by the six original defendants in this action to dismiss three of plaintiff's nine causes of action. See Rodriguez v. GB Lodging, LLC, 2023 WL 5976223 (S.D.N.Y. Sept. 14, 2023). Now, following the completion

---

[1] A "promote participation interest," or "promote," is a financial interest in the long-term capital gain of a real estate development. See "Carried Interest," National Association of Industrial and Office Parks, https://www.naiop.org/advocacy/additional-legislative-issues/carried-interest/#:~:text=A%20%22carried%20interest%22%20(also,the%20investors%20in%2 2the%20partnership (last accessed Feb. 11, 2025). A promote participation interest is typically paid only if the property is sold at a profit that exceeds the agreed-upon returns to the investors. Id.

-1-

of limited factual discovery, the two remaining defendants, GB Lodging and Anolag Jacpot 2 LLC ("Anolag") (together, "defendants"), bring a renewed motion to dismiss five of the six remaining causes of action on statute of limitations grounds or, in the alternative, for summary judgment on those claims. See ECF Nos. 47-51. For the reasons discussed herein, defendants' motion is not granted.

**BACKGROUND**

I.    **Factual Background[2]**

The facts of this case have been described in detail in this Court's previous decisions. See GB Lodging, LLC v. Rodriguez, No. 21 Civ. 1154 (NRB), 2022 WL 825492 (S.D.N.Y. Mar. 18, 2022); Rodriguez, 2023 WL 5976223 (S.D.N.Y. Sept. 14, 2023). Accordingly, we assume the reader's familiarity with the litigation history and provide only the background relevant for resolution of the instant motion.

a. **2012 Employment Agreement (the "Terms of Employment")**

Plaintiff was employed by defendant GB Lodging for approximately 18 months, beginning on February 1, 2012 and ending

---

[2] The facts herein are drawn from plaintiff's Amended Complaint and the exhibits attached thereto, ECF No. 17 ("Amended Complaint" or "AC"), which the Court finds incorporated by reference, DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010), as well as the parties' Rule 56.1 statements, ECF Nos. 51, 53. For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiff's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

on September 24, 2013.  See ECF No. 17 ("Amended Complaint" or "AC") ¶ 13.  On January 26, 2012, prior to starting his position as Executive Vice President of Acquisitions and Development, Rodriguez executed an employment agreement (the "Terms of Employment") with GB Lodging.  Id. ¶ 14.  Three of his remaining claims are premised on language contained in Section III of this agreement (the "PPI Provision"), which provided that he would receive "a 5% interest in the promoted participation earned and received by [GB Lodging] or its affiliate(s)" after certain pre-requisites had been met.[3]  See AC Ex. A ("Terms of Employment") § III.  This PPI Provision did not contain any language specifying when plaintiff's PPI interests would vest or whether his entitlement to those interests would survive beyond the termination of his employment with GB Lodging.  AC ¶ 20.

Plaintiff contends that, pursuant to this provision, he is entitled to PPIs from two properties acquired by GB Lodging and/or its affiliates while he was employed by the company: (i) a property

---

[3] Specifically, Section III of the Terms of Employment provided:

> In the event that GB Lodging sponsors a fund, syndicated investment vehicle for purposes of acquiring a property (ies) or directly or indirectly acquires a property (ies) or makes an investment (s) located anywhere in the world, you will receive, without charge, a 5% interest in the promoted participation earned and received by GB Lodging, LLC or its affiliate(s) after (i) the full return of GB's Principals' (Bruce Blum and Allen Gross) capital investment and (ii) a return on GB's Principals' capital investment of 12%.

AC Ex. A ("Terms of Employment") § III.

located at or about 5 Beekman Street, New York, New York (the "Beekman Street Property"), AC ¶¶ 148-61; and (ii) a property located at 61 Bond Street, New York, New York (the "Bond Street Property"), AC ¶¶ 162-72.

### b. 2013 Anolag Jacpot 2 JV LLC Profit Participation Agreement (the "Anolag Agreement")

Plaintiff also claims that he is entitled to PPI from a third property, located at Tchoupitoulas Street in New Orleans, Louisiana (the "Old No. 77 Property"), pursuant to a second agreement executed with GB Lodging and Anolag on September 16, 2013 (the "Anolag Agreement"). AC ¶¶ 44-52, 112-22. The parties do not dispute plaintiff's entitlement to PPI under this agreement.[4] See Rodriguez, 2023 WL 5976223, at *5-6.

### c. The Parties' Discussions Following Termination of Plaintiff's Employment

On September 24, 2013, Rodriguez terminated his employment with GB Lodging. AC ¶ 13. In the months that followed, he engaged in an extended negotiation with GB Lodging's principals regarding two proposed agreements: (i) a separation agreement (the "Separation Agreement"), which would have provided him with severance pay and other benefits; and (ii) an agreement concerning his receipt of PPI in connection with the sale of the Beekman

---

[4] While the parties do not dispute plaintiff's entitlement to PPI, they dispute the amount of PPI that plaintiff is owed under the Anolag Agreement. Rodriguez, 2023 WL 5976223, at *5-6. However, this issue is not relevant to the motion pending before the Court.

Street Property (the "Beekman Participation Agreement").  ECF No. 53 ("Rule 56.1 Counterstatement") at 13-14.  Ultimately, the parties did not execute either agreement.  Id. at 25-26.

Approximately two and a half years later, on May 31, 2016, defendants sold their ownership interests in the Old No. 77 Property.  AC ¶ 63.  Plaintiff subsequently emailed Bruce Blum, President of GB Lodging, to request information regarding the amount he would receive pursuant to the Anolag Agreement.  AC ¶ 64.  Although the parties exchanged emails regarding the sale and a proposed distribution of proceeds, plaintiff and defendants could not agree on the proper method for calculating the PPI plaintiff would receive under that agreement.  AC ¶¶ 65, 69.  On November 1, 2016, plaintiff's prior counsel sent defendants a demand letter seeking: (i) the payment of PPI relating to the sale of the Old No. 77 Property; and (ii) payment of any other sums due to plaintiff under the Terms of Employment.  See AC ¶¶ 69-70; AC Ex. D.

More than four years later, on December 28, 2020, plaintiff's current counsel sent a letter to GB Lodging, again demanding the payment of PPI relating to the Old No. 77 Property and seeking information sufficient to enable plaintiff to assess the value of his PPIs in the Beekman Street and Bond Street Properties.  See AC ¶¶ 81-82; AC Ex. E.  At this time, plaintiff's counsel also sent

-5-

defendants a proposed tolling agreement.  See AC ¶ 83; AC Ex. E at
6-12.  Defendants did not sign the agreement, and the parties'
negotiations were once again unsuccessful.  AC ¶¶ 84-86.

## II.  The Prior Action and Subsequent Procedural History

On January 21, 2021, GB Lodging and Anolag filed suit against
Rodriguez in New York state court, seeking, inter alia, a
declaratory judgment that he was not entitled to any payments under
the Terms of Employment or the Anolag Agreement.  See GB Lodging,
2022 WL 825492, at *3.  Rodriguez removed the action to this Court
and filed a motion to dismiss, which the Court granted, holding
that the suit was time-barred because the allegations by GB Lodging
and Anolag focused on the circumstances of Rodriguez's
termination, and the six-year statute of limitation for such claims
had already passed.  Id. at *3-6; see also AC ¶¶ 87-92.

On May 26, 2022, two months after the Court issued its opinion
in the previous case, plaintiff filed the instant action.  See ECF
No. 1.  He subsequently filed an Amended Complaint on November 9,
2022, asserting nine causes of action against defendants GB
Lodging, Anolag Jacpot 2 JV LLC, GFI Capital Resources Group, Inc.,
GFI Capital Holdings, LLC, Allen I. Gross, and Bruce Blum.  See
AC.

On December 2, 2022, defendants filed a motion to dismiss
eight of plaintiff's claims.  ECF Nos. 20-22.  On September 14,

2023, the Court issued a Memorandum and Order granting defendants'
motion to dismiss in part and denying it in part. Rodriguez, 2023
WL 5976223.  In that opinion, the Court stated that ruling on
plaintiff's breach of contract and declaratory judgment claims
would be premature, as neither party had submitted "definitive
case law articulating the significance of the Terms of Employment's
failure to specifically address whether plaintiff's entitlement to
PPIs was contingent on his continued employment" and the Court
"lack[ed] . . . a developed record on the parties' interactions
and negotiations[.]"  Rodriguez, 2023 WL 5976223, at *8.  We
requested that the parties conduct "limited factual discovery" to
determine:

> • Any exchanges, oral or written, during
> negotiations of the Terms of Employment concerning
> whether the PPI Provision would continue past
> termination; and
>
> • The parties' discussions prior to, and in the
> immediate aftermath of, plaintiff's departure from
> GB Lodging concerning his rights, if any, to PPIs.

Id.

On June 28, 2024, after the parties concluded this limited
factual discovery, defendants filed a renewed motion to dismiss
plaintiff's breach of contract and declaratory judgment claims,
or, in the alternative, a motion for partial summary judgment on
these claims.  ECF No. 47 ("Mot.").  Accompanying this motion was
a Memorandum of Law in Support of the Motion, a Rule 56.1

Statement, and a Declaration by GB Lodging's Chief Legal Counsel attaching deposition testimony excerpts and written correspondence from the parties' 2013 negotiations.  ECF Nos. 48-51.  Plaintiff filed his opposition on August 7, 2024, ECF No. 52 ("Opp."), along with a Memorandum of Law in Support of the Opposition, a Rule 56.1 Counterstatement, and a Declaration by plaintiff's counsel attaching additional deposition testimony excerpts and written correspondence from the parties' 2013 negotiations.  ECF Nos. 53-55.  The motion was fully briefed on August 27, 2024, ECF Nos. 56-57, and the Court held oral argument on January 7, 2025.

## LEGAL STANDARDS

### I.   Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged."  Id.  A court must "accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in [plaintiff's] favor[.]"  Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012)

-8-

(citing Muto v. CBS Corp., 688 F.3d 53, 56 (2d Cir. 2012)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

The statute of limitations is an affirmative defense on which the moving party bears the burden of proof. See Fed. R. Civ. P. 8(c)(1); Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995). "Where the dates in a [pleading] show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). A court may grant a motion to dismiss on statute of limitations grounds "if a complaint clearly shows the claim is out of time[.]" Amberger v. Legacy Capital Corp., Case No. 17 Civ. 532 (NRB), 2017 WL 4863093, at *2 (S.D.N.Y. Oct. 16, 2017) (internal citation and quotations omitted).

## II.  Fed. R. Civ. P. 56(a)

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). "A genuine issue of material fact exists if 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

## DISCUSSION

As an initial matter, we address the procedural posture of this opinion.  Following the completion of limited factual discovery, defendants have filed a renewed motion to dismiss setting forth substantially the same statute of limitations arguments for dismissal of plaintiff's breach of contract and declaratory judgment claims asserted in their prior motion and, alternatively, moving for summary judgment under Rule 56.

In the current briefing, both parties rely on material outside the pleadings, including deposition testimony and written correspondence produced during their limited factual discovery.  See ECF No. 48 Exs. A-D; ECF No. 54 Exs. A-M.  When a party moving to dismiss relies on materials outside the pleadings, the Court is required to convert the motion to one for summary judgment.  Fed.

-10-

R. Civ. P. 12(d); see also Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006). Whether formal conversion is necessary when a party has already moved in the alternative for summary judgment is unclear but, given the parties' briefing, we must treat this as a motion for summary judgment.

Accordingly, with the benefit of a fuller record, we now turn to defendants' arguments regarding the timeliness of plaintiff's breach of contract and declaratory judgment claims.

## I. Breach of Contract Claims (Counts One, Six, and Seven)

Defendants contend that plaintiff's breach of contract claims are untimely, providing two alternate explanations for when the statute of limitations on such claims began to accrue.[5] Mot. at 9-21. Specifically, defendants argue that the statute of limitations began to run either: (a) immediately upon plaintiff's departure from GB Lodging in September 2013, or (b) following the parties' negotiations between September and December 2013. Id. We review each argument in turn.

---

[5] The parties agree that the statute of limitations applicable to plaintiff's breach of contract claim is six years. See N.Y. C.P.L.R. § 213; Mot. at 10; Opp. at 19-20.

As the Court noted in its prior opinion, Rodriguez 2023 WL 5976223, at *6, both parties tie their statute of limitations arguments to their substantive arguments regarding the PPI Provision. See Mot. at 9-21; Opp. at 11-24.

**a. The Statute of Limitations Began to Run Upon Plaintiff's Departure from GB Lodging**

Citing the absence of survival language in the PPI Provision, defendants first contend that the statute of limitations for any breach of contract action began to run immediately upon plaintiff's departure from GB Lodging.  Mot. at 9-17.  In support of this argument, defendants cite the general rule under New York law that the statute of limitations for a breach of contract claim begins to accrue upon termination of the agreement, Mot. at 10.  See Rachmani Corp. v. 9 E. 96th St. Apartment Corp., 211 A.D.2d 262, 267 (1st Dep't 1995) ("[O]nce a contract comes to an end, either by operation of its terms or by declaration of an anticipatory breach as a result of its repudiation, the Statute of Limitations begins to run.").  Defendants also cite the principle of expressio unius est exclusion alterius, Mot. at 14, noting that three other provisions in the Terms of Employment, which plaintiff negotiated with the assistance of counsel, explicitly stated that they would survive beyond the termination of his employment.[6]  Mot. at 13-14 (citing AC Ex. A §§ IX, VII, and VIII).

Plaintiff, however, argues that the absence of survival language in the PPI Provision indicates instead that he became entitled to PPI interests in properties acquired by GB Lodging

---

[6] The relevant sections of the Terms of Employment are Sections IX, VII, and VIII.  AC Ex. A §§ IX, VII, and VIII.

immediately upon execution of the Terms of Employment, and that such interests survived the termination of his employment with GB Lodging. Opp. at 8-9, 11-15. Further, he claims, the conditions precedent in the PPI Provision operated as long-term financial benchmarks that were necessarily intended to post-date the termination of his employment. Opp. at 12-13. Accordingly, plaintiff asserts, his breach of contract claims did not accrue until defendants breached the Terms of Employment by failing to pay him the PPI to which he claims he was entitled following the sale of the Beekman and Bond Street Properties.[7] Opp. at 12-13, 19, 22 (citing Ely-Cruikshank Co. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. 1993)) (holding that the statute of limitations for a breach of contract claim accrues "at the time of the breach").

---

[7] Plaintiff alleges, on information and belief, that the conditions precedent to his receipt of PPI in connection with the Beekman and Bond Street Properties were satisfied at some point between 2016 and 2021. See AC ¶¶ 73-80.

In his opposition, plaintiff cites two cases that he contends are instructive in confirming the timeliness of his action. Opp. at 22. However, neither case is overly persuasive to this Court. In Teague v. Healthcare Dev. Partners, LLC, the Northern District of Illinois denied summary judgment on a breach of contract claim involving plaintiff's entitlement to a promote participation interest under a compensation agreement that provided for a promote interest when plaintiff had a "direct managerial" role in a given project. No. 18 Civ. 601, 2021 WL 780720, at *1 (N.D. Ill. Mar. 1, 2021); see also Teague v. Healthcare Dev. Partners, LLC, No. 18 Civ. 601, 2019 WL 3973372 (N.D. Ill. Aug. 22, 2019). However, the court did not address the issue of when the statute of limitations began to run. Id. In Leyton v. Siegel, the First Department, Appellate Division of the New York state court awarded plaintiff a promote participation interest based on an "unambiguous" Operating Agreement that specifically listed certain "Promote Forfeiture Event[s]," which did not include termination. 212 A.D.3d 521, 524 (1st Dep't 2023). Given the inclusion of this clause, the contractual language is not sufficiently similar to prove persuasive.

-13-

The threshold question addressed by the Court on a motion for summary judgment for breach of contract is whether the contract provision at issue is ambiguous.  If the "contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate[.]"  Starr Indemn. & Liab. Co. v. Excelsior Ins. Co., 516 F. Supp. 3d 337, 346 (S.D.N.Y. 2021) (quoting Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006) (internal quotation marks and citations omitted)).  "Where contract terms or provisions are susceptible to at least two reasonable interpretations, and intent must be gleaned from disputed evidence or from inferences outside the written words, it becomes an issue of fact that must be resolved by trial."  Wilder v. World of Boxing LLC, 310 F. Supp. 3d 426, 441 (S.D.N.Y. 2018), aff'd, 777 F. App'x 531 (2d Cir. 2019) (internal quotation marks and citations omitted); see also Goldman Sachs Grp., Inc. v. Almah LLC, 924 N.Y.S. 2d 87, 90 (1st Dep't 2011) (similar).

As a matter of first impression, defendants' position appears stronger than the one advanced by plaintiff.  To accept plaintiff's contentions, the Court must also accept the notion that Rodriguez became entitled to PPI in the relevant properties immediately after beginning his employment at GB Lodging, without any effort on his

part or the fulfillment of any conditions precedent in the Terms of Employment.  Such an approach strikes the Court as illogical.

However, serious problems exist with respect to defendants' position, as well.  Specifically, defendants drafted and entered into an agreement without any clear boundaries.  Defendants could have added language to the Terms of Employment regarding when and how plaintiff became entitled to PPI and whether he needed to be employed at GB Lodging to earn PPI at the time his interest matured.  They did not do so.

In the absence of any such terms and without evidence speaking to the parties' intent when entering into the Terms of Employment, the Court is left without a clear basis for determining which party's interpretation of the contractual language is correct. Although both parties have put forth reasonable interpretations of the contract, neither has provided the Court with definitive case law regarding the import of the absence of survival language in a provision such as this.

Further, the Court ordered limited discovery in the hope that any ambiguities in the Terms of Employment might be resolved through extrinsic evidence.  Summary judgment is appropriate if contractual ambiguity "may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these

ambiguities in favor of the nonmoving party's case." Topps Co.,
Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008);
see also Faulkner v. Nat'l Geographic Soc., et al., 452 F. Supp.
2d 369, 376 (2006) ("If all the extrinsic evidence supports a
single interpretation, the court may grant summary judgment for
the party advocating the interpretation, almost as if the language
had been unambiguous in the first place." (citations and quotation
marks omitted)).

Unfortunately, summary judgment is not available based on the
extrinsic evidence that has been submitted to the Court.  Although
the Court explicitly requested that the parties engage in discovery
regarding the communications between the parties in the weeks
leading up to the execution of the Terms of Employment, Rodriguez,
2023 WL 5976223, at *8, neither party provided the Court with any
written correspondence from this period.  See Jan. 7, 2025 Oral
Argument Transcript ("Tr.") at 5:23-7:13 (confirming no written
communications relevant to this request were attached to the
parties' briefing).  Accordingly, the Court has received no written
evidence that might shed light on the parties' intent at the time
they drafted the agreement.

Moreover, although both parties attached excerpts from
deposition testimony by plaintiff, Blum, and Ilya Braz to their
briefing, these individuals provided conflicting accounts

regarding their understanding of the PPI Provision at the time of its drafting and their conversations regarding its import following execution of the Terms of Employment. See ECF No. 48 Ex. B at 1-60; ECF No. 54 Ex. A-B, D-J. We decline to grant a motion for summary judgment based on "he-said, he-said" testimony regarding events that occurred more than ten years ago. This is particularly true where, as here, the written record alone is insufficient to establish that no genuine dispute of material fact exists.

### b. The Statute of Limitations Began to Run During or After the Parties' Negotiations between September and December 2013

Alternatively, citing the deposition testimony and written correspondence attached to their briefing, defendants contend that, even if plaintiff had been entitled to PPIs under the Terms of Employment following his departure from GB Lodging, the parties' negotiations following his termination provided him with sufficient notice of the existence of a dispute between the parties regarding that entitlement. Mot. at 18-21. Accordingly, defendants assert, the statute of limitations for plaintiff's breach of contract claim began to run shortly after these negotiations began or, at the latest, after the parties agreed to halt their negotiations in December 2013. See id. at 21.

Plaintiff disputes that defendants provided him with notice of the existence of a dispute regarding his entitlement to PPIs under the Terms of Employment, claiming instead that the record shows the parties' negotiations exclusively concerned severance pay and other benefits that plaintiff would receive pursuant to a proposed Separation Agreement.  Opp. at 16-18.  In exchange for these benefits, he asserts, the parties discussed a possible reduction in plaintiff's PPI from the Beekman Property under a proposed Beekman Participation Agreement.  Id. at 17.  Plaintiff contends that the fact that neither agreement was executed means that he retained all his surviving rights, including his PPI interests, under the Terms of Employment.  Id. at 17-18.

We agree that the parties' written correspondence following plaintiff's departure from GB Lodging does not contain a definitive statement by either party on this issue.  Rather, the parties' emails focus on their negotiations surrounding the benefits that plaintiff would have received under the proposed Separation Agreement, as well as the amount of PPI that plaintiff would have received in connection with the Beekman Property under the proposed Beekman Participation Agreement.  Defendants do not identify, and this Court cannot locate, a decisive statement by either party in the contemporaneous written record suggesting the existence of a

-18-

dispute regarding plaintiff's entitlement to PPI under the Terms of Employment following his departure from GB Lodging.[8]

Accordingly, at this stage, the Court cannot conclude that there is "no reasonable basis for a difference of opinion" regarding plaintiff's entitlement to PPI under the Terms of Employment following his departure from GB Lodging or whether the statute of limitations has expired for his breach of contract claims. Vetromile v. JPI Partners, LLC, 706 F. Supp. 2d 442, 448 (S.D.N.Y. 2010) (citation and quotation marks omitted). Defendants' motion for summary judgment on plaintiff's breach of contract claims is therefore denied.

## II. Declaratory Judgment Claims (Counts Eight and Nine)

Defendants further contend that plaintiff's declaratory judgment claims are untimely, asserting that the statute of limitations for such claims began to run when plaintiff terminated his employment at GB Lodging or shortly thereafter. Mot. at 22-24.

---

[8] Defendants also suggest that the execution of the Anolag Agreement, which superseded the Terms of Employment with respect to plaintiff's interest in the Old No. 77 Property, serves as evidence of "the [p]arties' belief that [p]laintiff's PPIs terminated when his employment ended[.]" Mot. at 17-18. However, as discussed at oral argument, the parties executed the Anolag Agreement on September 16, 2013, eight days before plaintiff left GB Lodging. Tr. at 24:21-25:7. As with much of the evidence before the Court, although the parties' decision to enter into a separate agreement to memorialize plaintiff's entitlement to PPI during his employment at GB Lodging is notable, this alone is insufficient to establish that there is no genuine dispute of material fact.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Courts in this Circuit . . . have concluded that the federal Declaratory Judgment Act, . . . rather than an otherwise applicable state declaratory judgment act, governs in diversity actions under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)." Bruno v. Casella Waste Sys., Inc., 616 F. App'x 20, 21 n.2 (2d Cir. 2015). A court's decision to issue a declaratory judgment may depend, among other things, upon "equitable considerations and . . . teachings and experience concerning the functions and extent of federal judicial power." Green v. Mansour, 474 U.S. 64, 72 (1985) (citations and quotation marks omitted).

A cause of action for declaratory relief accrues when there is a dispute between the parties that is "definite and concrete[.]" GemShares, LLC v. Kinney, No. 17 Civ. 844 (CM), 2017 WL 1092051, at *2 (S.D.N.Y. Mar. 15, 2017) (quoting MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 (2007)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all[.]"

Berardi v. Berardi, No. 23 Civ. 1011, 2024 WL 1269902, at *2 (2d Cir. Mar. 26, 2024) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)) (internal quotation marks omitted).  Stated otherwise, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, 549 U.S. at 127.

Because plaintiff's declaratory judgment claims are tied to the parties' underlying dispute regarding his entitlement to PPI under the Terms of Employment following his termination, the same six-year statute of limitations applicable to plaintiff's breach of contract claims applies to his declaratory judgment claims. See GB Lodging, 2022 WL 825492, at *5 ("To determine whether an action for declaratory judgment is time-barred, courts look to whether 'the applicable limitations period has run on a direct claim to obtain such relief.'")(quoting 118 East 60th Owners, Inc. v. Bonner Props., Inc., 677 F.2d 200, 202 (2d Cir. 1982)); see also Rodriguez, 2023 WL 5976223, at *5.

Although the written record shows that the parties engaged in extended negotiations regarding the terms of the proposed Separation and Beekman Participation Agreements following plaintiff's departure from GB Lodging, we cannot say that the written communications produced to the Court contain "definite"

-21-

notice that the parties disagreed regarding plaintiff's entitlement to PPIs under the Terms of Employment following his termination.

Nor is the Court sufficiently persuaded by the vague and conflicting deposition testimony submitted by the parties. Although Blum and Braz testified that otherwise undocumented conversations occurred in 2013 in which they disputed plaintiff's entitlement to PPIs under the Terms of Employment, given the absence of additional written evidence and the passage of more than ten years' time, this testimony taken alone is insufficient to serve as evidence of the existence of a "definite and concrete" dispute between the parties on this issue. See, e.g., ECF No. 48, Ex. B at 41-44, 54-55, 58-59.

Accordingly, genuine issues of material fact remain regarding when the statute of limitations began to run for plaintiff's declaratory judgment claims. Defendants' motion for summary judgment on such claims must also be denied.[9]

---

[9] Given the amount of ink that has been spilled by the parties and the Court, we assume that this result is not particularly satisfying. While this Court does not encourage the casual filing of lawsuits, we are here because neither party chose to file even a declaratory judgment action following Rodriguez's departure from GB Lodging, even when they no doubt had very different views regarding the circumstances under which Rodriguez was entitled to PPI. Moreover, for reasons at which the Court can only guess, the parties chose not to express those views in written words. Thus, a resolution of this dispute will require a determination of facts now a decade old. In retrospect, it would have been better if the parties had decided to resolve this dispute far earlier.

## CONCLUSION

For the reasons stated above, defendants' motion is denied. The parties are directed to appear for a conference on March 6, 2025 at 3:00 p.m. in Courtroom 21A of the United States Courthouse located at 500 Pearl Street, New York, New York 10007.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 47.


       **SO ORDERED.**

Dated:      February 20, 2025
            New York, New York

                                            NAOMI REICE BUCHWALD
                                   UNITED STATES DISTRICT JUDGE